#067414

ORIGINAL

FILED
NOV 28 2007
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**BID PROTEST**

| | |
|---|---|
| INTERNATIONAL MANAGEMENT SERVICES, INC. | |
| Plaintiff, | |
| v. | CFC No. 07-831 C |
| THE UNITED STATES | Judge |
| Defendant. | |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

**COMES NOW** Plaintiff International Management Services, Inc. ("IMS") by and through undersigned counsel, and files this Complaint for Injunctive Relief and Declaratory Judgment.

**Parties**

1. Plaintiff IMS is a Maine corporation whose principal office is located in Rumford, Maine. IMS is engaged in the business of providing linguists on a commercial basis.

2. The Defendant is the United States of America through the U.S. Army Intelligence and Security Command ("INSCOM" or "Army").

**Jurisdiction**

3. Jurisdiction in this Court is based on the Tucker Act, 28 U.S.C. §§ 1491(a)(2) and 1491(b)(1).

**Facts**

4. Based on information and belief, and as explained more fully below, there were no qualified offerors for this solicitation. IMS submitted an offer and was awarded the contract until the Small Business Administration determined IMS to be other than small based on its affiliation with WorldWide Language Resources ("WWLR") and based on the ostensible subcontractor rule.[1] Every offeror in the competitive range of this procurement is other than a small business, either by virtue of its average annual receipts, or through affiliation with a large business. Furthermore, every offeror in the competitive range will necessarily rely on an ostensible subcontractor, regardless of whether the offeror explicitly stated this to be the case in its proposal. The statement of work required under the terms of solicitation No. W911W4-05-R-0006 cannot be performed by a small business.

5. On June 30, 2006, INSCOM issued solicitation No. W911W4-05-R-0006 for U.S. Army Linguist Translation and Interpretation Support for Operation Enduring Freedom in Afghanistan ("Solicitation" or "RFP").

6. The RFP was 100 percent set aside for small business using North American Industry Classification System ("NAICS") code 54190 (Translation and Interpretation

[1] The ostensible subcontractor rule states "[a] contractor and its ostensible subcontractor are treated as joint venturers, and therefore affiliates, for size determination purposes. An ostensible subcontractor is a subcontractor that performs primary and vital requirements of a contract, or of an order under a multiple award schedule contract, or a subcontractor upon which the prime contractor is unusually reliant. All aspects of the relationship between the prime and subcontractor are considered, including, but not limited to, the terms of the proposal (such as contract management, technical responsibilities, and the percentage of subcontracted work), agreements between the prime and subcontractor (such as bonding assistance or the teaming agreement), and whether the subcontractor is the incumbent contractor and is ineligible to submit a proposal because it exceeds the applicable size standard for that solicitation." 13 C.F.R. § 121.103(h)(4)).

Services), with a size standard of $6.5 million.

7. The RFP was to result in an Indefinite Delivery, Indefinite Quantity ("IDIQ"), task order contract.

8. The minimum order under the resulting IDIQ contract was $10 million and the maximum of all orders was $703 million.

9. On or about August 13, 2006, IMS submitted a timely proposal in response to the RFP.

10. On information and belief, the Army considered four contractors to be qualified to perform the requirement, and placed these four in the competitive range.

11. On information and belief, the contractors that the Army placed in the competitive range were: IMS, Aegis Mission Essential Personnel, LLC ("Aegis"), Torres Advanced Enterprise Solutions, LLC ("Torres") and Thomas Computer Solutions, LLC ("TCS").

12. On or about December 15, 2006, after negotiations were completed, the Army awarded a contract to TCS.

13. On December 20, 2006, IMS, Aegis and Torres filed size protests with the Army Contracting Officer ("CO") asserting that TCS was not small.

14. On January 8, 2007, the Small Business Administration ("SBA") a issued Size Determination Case Nos. 2-2007-28, 29 & 39 finding TCS to be other than small because its average annual receipts exceeded $6.5 million.

15. On or about January 31, 2007, the Army rescinded the contract award to TCS, and made award to IMS.

16. On February 6, 2007, Torres filed a size protest with the contracting officer asserting that IMS was not a small business because of its affiliation with WorldWide Language Resources, Inc. ("WWLR") and based on its undue reliance on WWLR under the ostensible subcontractor rule.

17. On February 7, 2007, Aegis filed a size protest with the contracting officer asserting that IMS was not a small business because of its affiliation with WorldWide Language Resources, Inc. ("WWLR"), a large business, and based on its undue reliance on WWLR under the ostensible subcontractor rule.

18. On February 16, 2007, Torres and Aegis filed protests at the Government Accountability Office ("GAO") (B-299315.2 & B-299315.2) asserting that the Army had improperly selected IMS for award because the Army's evaluation was improper, the Army had failed to conduct meaningful discussions and the Army's best value determination was unreasonable.

19. On March 2, 2007, the SBA issued Size Determination Case Nos. 1-SD-2007-27, 28, finding IMS other than small both because it had one or more ostensible subcontractors and because it was affiliated with WWLR.

20. The March 2, 2007 SBA size determination explicitly noted that "SBA also notes that with a size standard of $6.5 million, it is not surprising that a small business would be forced to rely heavily on its larger subcontractors." 1-SD-2007-27, 28 at 6.

21. On March 7, 2007 the Army canceled the award decision and contract to IMS.

22. On March 9, 2007, the GAO dismissed protests B-299315.2 & B-299315.3 because the agency had canceled the award decision and contract to IMS.

23. On or about September 21, 2007 the Army made award pursuant to the RFP to Aegis.

24. On September 27, 2007, IMS submitted a size protest to the Army CO asserting that Aegis was other than small because it exceeds the relevant receipts standard and because Science Applications International Corporation ("SAIC"), a large business with revenues of $8.3 billion in fiscal year 2007, was affiliated with Aegis as its ostensible subcontractor.

25. On September 27, 2007, in the same size protest of Aegis, IMS submitted a size protest of Torres, asserting that it was other than small because its receipt exceeded the relevant receipts standard and because L-3 Communications ("L-3), a large business, was affiliated with Torres as its ostensible subcontractor.

26. On October 3, 2007, Torres filed a protest at the Government Accountability Office concerning the RFP, which was docketed as B-299315.4. Plaintiff does not know the basis of that protest.

27. On October 9, 2007, Torres filed a protest at the Government Accountability Office concerning the RFP, which was docketed as B-299315.5. Plaintiff does not know the basis of that protest.

28. On October 18, 2007 Torres filed a size protest against Aegis, asserting that Aegis was other than small because its average annual receipts exceeded the relevant receipts standards and because Aegis was affiliated with several additional entities based solely upon the appearance of the name of Aegis's Chief Executive Officer in Ohio Secretary of State records.

29. On October 26, 2007, in Size Determination No. 4-2007-3, the SBA dismissed IMS's size protest of Aegis without mentioning the protest of Torres, asserting that IMS lacked standing under the provisions of 13 C.F.R. § 121.1004(a)(1) and 13 C.F.R. §121.1001(a)(1)(iv).

30. On November 2, 2007, the SBA issued Size Determination Case No. 4-2008-4, and found Aegis to be a small business under the RFP's size standard. This determination does not consider or address the question of SAIC or any other contractor as an "ostensible subcontractor."

31. On November 9, 2007, the GAO dismissed protests B-299315.4 and B-299315.5. Plaintiff does not know the basis of those dismissals.

**Count I (Army's Failure to Consider Ostensible Subcontractor)**

32. Paragraphs 1 to 31 are incorporated herein by reference.

33. In violation of FAR 19.501 and the Small Business Act, 15 U.S.C. § 644, the Army Contracting Officer failed to raise or consider the question of Aegis's ostensible subcontractor, even though the Contracting Officer was fully aware of this issue.

**Count II (SBA's Failure to Consider Ostensible Subcontractor)**

34. Paragraphs 1 to 31 are incorporated herein by reference.

35. In violation of 13 C.F.R. § 121.1009, FAR 19.501 and the Small Business Act, 15 U.S.C. § 644, the SBA failed to raise or consider Aegis's ostensible subcontractor (SAIC), an unquestionably large business (revenues of $8.3 billion in fiscal 2007), even though the SBA knew or should have known that this was a significant issue in this procurement.

**Count III (Award to Other Than A Small Business)**

36. Paragraphs 1 to 31 are incorporated herein by reference

37. In violation of FAR 19.501, 13 C.F.R. § 121.1009 and the Small Business Act, , 15 U.S.C. § 644, the Army awarded the contract to an offeror that was "other than a small business," and thereby undermined one of the basic tenets of the Small Business Act, the regulations promulgated thereunder, and FAR Part 19.

**REQUEST FOR RELIEF**

IMS respectfully requests:

38. That the Court issue a Preliminary Injunction prohibiting the Army from proceeding with performance of the contract awarded to Aegis pursuant to the RFP, including the issuance of any delivery orders pursuant thereto.

39. That the Court declare that the Army award of the contract to Aegis pursuant to the RFP violated the FAR, the Small Business Act and its implementing regulations, and was improper.

40. That the Court direct the Army to recompete the RFP on the basis of full and open competition since there is no qualified small business capable of providing the required linguist services.

41. That IMS be awarded its reasonable costs, attorneys' fees, and proposal costs, and such further relief as is determined just and fair by the Court.

DATE: November 28, 2007

Respectfully submitted,

Richard D. Lieberman
McCarthy, Sweeney & Harkaway, PC
2175 K St., NW, Suite 600
Washington, DC 20037
202-775-5560
fax 202-775-5574
rlieberman@mshpc.com

Counsel to Plaintiff, International Management Services, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of Plaintiff's Complaint to be served on this 28th day of November 2007, by electronic means on the following:

David D'Alessandris, Esq.
U.S. Department of Justice
Commercial Litigation Branch
Civil Division, Room 12126
1100 L St, N.W.
Washington, DC 20530
Phone: 202-307-0139
Fax: 202-514-8624
david.d'alessandris@usdoj.gov

Laurel A. Hockey
Cohen and Mohr, LLP
Counsel to Aegis Mission Essential Personnel, LLC
1055 Thomas Jefferson Street, NW, Suite 504
Washington, DC 20007
Phone: 202-342-2500
Fax: 202-342-6147
lhockey@cohenmorh.com

John Isgrigg, III
Contracting Officer
USA INSCOM
8825 Beulah Street
Fort Belvoir, VA 22060
Phone: 703-428-4565
Fax: 703-428-4914
john.isgriggiii@us.army.mil

Richard D. Lieberman