IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 07-831 C
(Judge Sweeney)

INTERNATIONAL MANAGEMENT SERVICES, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

AEGIS, MISSION ESSENTIAL PERSONNEL LLC,

Defendant-Intervenor.

# DEFENDANT'S MOTION TO DISMISS

JEFFERY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

FRANKLIN E. WHITE, JR.
Assistant Director

DAVID D'ALESSANDRIS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L. Street, N.W.
Washington, D.C. 20530
Telephone: (202) 307-1011

December 6, 2007

Attorneys for the Defendant

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

DEFENDANT'S MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DEFENDANT'S BRIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I. Standard Of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II. IMS Is Not An "Interested Party" And Lacks Standing To Protest The Award To Aegis 6

III. IMS Lacks Standing To Challenge The SBA's Size Determination With Regard To Aegis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV. IMS' Allegation That Aegis Is Other Than Small Is Non-Justiciable . . . . . . . . . . . . . . . . 9

V. By Submitting A Bid As A Small Business, IMS Has Waived Its Right To Challenge The Small Business Set Aside . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

TABLE OF AUTHORITIES

I. CASES Page

Alfa Laval Separation, Inc. v. United States,
175 F.3d 1365 (Fed. Cir. 1999) . . . . . . . . . . 7

Am. Fed'n of Gov't Employees v. United States,
258 F.3d 1294 (Fed. Cir. 2001) . . . . . . . . . . 7

Associated General Contractors v. California State Council of Carpenters,
459 U.S. 519 (1983) . . . . . . . . . . 6

Banknote Corp., Inc. v. United States,
365 F.3d 1345 (Fed. Cir. 2004) . . . . . . . . . . 9

Blue & Gold Fleet, L.P.,
492 F. 3d 1308 (Fed. Cir. 2007) . . . . . . . . . . 15, 17

Brunetti v. Rubin,
999 F.Supp. 1408 (D. Colo. 1998) . . . . . . . . . . 5

Chapman Law Firm v. United States,
63 Fed. Cl. 25 (2004) . . . . . . . . . . 11

Client Network Services, Inc. v. United States,
64 Fed. Cl. 784 (2005) . . . . . . . . . . 13

Delaney Constr. Corp. v. United States,
56 Fed. Cl. 470 (2003) . . . . . . . . . . 12

Impresa Construzioni Geom. Domenico Garufi v. United States,
238 F.3d 1324 (Fed. Cir. 2001) . . . . . . . . . . passim

LB & B Associates Inc. v. United States,
68 Fed. Cl. 765 (2005) . . . . . . . . . . 13

Latecoere Int'l, Inc. v. United States,
19 F.3d 1342 (11th Cir. 1994) . . . . . . . . . . 9

Lavezzo v. United States,
74 Fed. Cl. 502 (Fed. Cl. 2006) . . . . . . . . . . 5

Longview Construction Co.,
1986 WL 63444 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Mark Dunning Industries, Inc. v. United States,
60 Fed. Cl. 687 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 13

Mercer v. United States,
52 Fed. Cl. 718 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Mid-West-Constr., Ltd. v. United States,
181 Ct. Cl. 387 F.2d 957 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 15

Moore's Cafeteria Services, d/b/a MCS Management,
77 Fed. Cl. 180 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Murphy v. United States,
993 F.2d 871 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Myers Investigative and Security Services, Inc. v. United States,
275 F.3d 1366 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Perez v. United States,
156 F.3d 1366 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Rex Service Corp. v. United States,
448 F.3d 1305 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Scheuer v. Rhodes,
416 U.S. 232 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Tech Systems, Inc.,
2001 WL 399860 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Three S Contractors v. United States,
13 Cl. Ct. 41, 45 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Trauma Service Group v. United States,
104 F.3d 1321 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## II. STATUTES AND REGULATIONS


5 U.S.C. § 706 . . . . . . . . . . 5

5 U.S.C. § 706(2) . . . . . . . . . . 8

10 U.S.C. 2304 . . . . . . . . . . 16

10 U.S.C. § 2305(b)(1) . . . . . . . . . . 15

28 U.S.C. § 1491(b) . . . . . . . . . . 6

28 U.S.C.§ 1491(b)(1) . . . . . . . . . . 7

28 U.S.C. § 1491(b)(4) . . . . . . . . . . 5, 8

31 U.S.C. § 3551 . . . . . . . . . . 7

41 U.S.C. § 416(b) (4) . . . . . . . . . . 16

4 C.F.R. 21.2 (a)(1) . . . . . . . . . . 15

13 C.F.R. § 121.1001(a)(1)(iv) . . . . . . . . . . 4, 13

13 C.F.R. § 121.1004(a)(1) . . . . . . . . . . 4

13 C.F.R. § 121.1006 . . . . . . . . . . 10, 11

13 C.F.R. § 121.1009 . . . . . . . . . . 10

48 C.F.R. § 19.302(g)(2) . . . . . . . . . . 12

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INTERNATIONAL MANAGEMENT SERVICES, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 07-831C (Judge Sweeney) |
| THE UNITED STATES, | ) | |
| Defendant, | ) | |
| and | ) | |
| AEGIS, MISSION ESSENTIAL PERSONNEL LLC, | ) | |
| Defendant-Intervenor. | ) | |

DEFENDANT'S MOTION TO DISMISS
FOR LACK OF STANDING AND NON-JUSTICIABILITY

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits this motion to dismiss for lack of jurisdiction as plaintiff International Management Services, Inc. ("IMS") lacks standing to bring this challenge to the procurement decision of the United States Army ("Army"). Additionally, IMS' complaint fails to state a claim, as it seeks review of non-justiciable determinations. Moreover, IMS cannot challenge the terms of the solicitation post-award. IMS has waived its challenge to the terms of the solicitation by self-certifying as a small business and submitting a bid.

DEFENDANT'S BRIEF

STATEMENT OF THE ISSUES

1. Whether IMS lacks standing to protest the Army's award a contract that was 100 percent set-aside for a small business, when IMS has been determined by the Small Business Administration ("SBA") to be other than small in this solicitation, and where IMS is not next in line for award.

2. If IMS does possesses standing, whether IMS seeks review of a non-justiciable issue, as any determination by the SBA that the awardee was other than small would only apply to future solicitations pursuant to FAR 19.302(i), as no interested party filed a size protest prior to award of the contract.

3. Whether IMS may present a post-award challenge the terms of the solicitation, specifically the small business set-aside, where it is undisputed that IMS knew pre-award of the small business set-aside, and submitted a bid self-certifying that it was, in fact, a small business.

STATEMENT OF FACTS

On June 30, 2006, the Army issued solicitation No. W911W4-05-R-0006 ("the solicitation") for U.S. Army Linguist Translation and Interpretation Support for Operation Enduring Freedom in Afghanistan. Complaint ("Compl.") ¶ 5.[1] The solicitation was 100 percent set aside for small businesses pursuant to North American Industry Classification System ("NAICS") code 54190, Translation and Interpretation Services. Compl. ¶ 6. The size standard for the applicable NAICS code was $6.5 million average annual receipts. Compl. ¶¶ 6, 14. The

[1] Plaintiff's statement of facts is assumed to be true for the purpose of this motion. In the event that our motion is not granted, we reserve the right to challenge these facts.

solicitation provided for an indefinite delivery, indefinite quantity ("IDIQ") task order contract with a minimum order of $10 million and a maximum of $703 million. Compl. ¶¶ 7 - 8.

In response to the solicitation, the Army received offers from four contractors in the competitive range. Those contractors were: Thomas Computer Solutions, LLC ("TCS"); International Management Services, Inc.; Aegis Mission Essential Personnel, LLC ("Aegis"); and Torres Advanced Enterprise Solutions, LLC ("Torres"). Compl. ¶¶ 10, 11.

On or about December 15, 2006, the Army awarded the contract to TCS. Compl. ¶ 12. On December 20, 2006, the three unsuccessful offerors in the competitive range, IMS, Aegis, and Torres, each filed size protests with the Army contracting officer alleging that TCS was not small. Compl. ¶ 13. On January 8, 2007, the Small Business Administration ("SBA") Area Office issued a size determination in case nos. 2-2007-28, 29 & 39 finding that TCS was other than small, as its average annual receipts were greater than $6.5 million. Compl. ¶ 14. The Army subsequently rescinded the contract with TCS and, on or about January 31, 2007, awarded the contract to IMS. Compl. ¶ 15.

On February 6 and 7, 2007, Torres and Aegis filed size protests with the contracting officer, alleging that IMS was not small due to its affiliation with WorldWide Language Resources, Inc. ("WWLR") and undue reliance upon WWLR pursuant to the ostensible subcontractor rule. Compl. ¶¶ 16-17. On February 16, 2007, Aegis and Torres each filed protests with the Government Accountability Office ("GAO") with regard to the award to IMS. Compl. ¶ 18. On March 2, 2007, the SBA Area Office issued size determination case nos. 1-SD-2007-27, 28, finding IMS to be other than small due to IMS' affiliation with WWLR and its ostensible subcontractors. Compl. ¶ 19. On March 7, 2007, the Army cancelled the award to

IMS, and two days later the GAO dismissed the protests filed with regard to the award to IMS. Compl. ¶¶ 21-22.

On or about September 21, 2007, the Army awarded the contract to Aegis. Compl. ¶ 23. On September 27, 2007, IMS submitted size protests with regard to both Aegis and Torres, alleging that each was not small because their receipts exceeded the size standard, and because they were allegedly affiliated with a large business as an ostensible subcontractor. Compl. ¶¶ 24-25. On October 3, 2007, and on October 9, 2007, Torres protested the award to GAO. Compl. ¶¶ 26-27. On October 18, 2007, Torres filed a size protest with regard to Aegis, alleging receipts in excess of the applicable size standard, and affiliation with several other entities. Compl. ¶ 28.

On October 26, 2007, in Size Determination No. 4-2007-3, the SBA Area Office dismissed IMS' size protests with regard to Aegis, holding that IMS lacked standing pursuant to 13 C.F.R. § 121.1004(a)(1) and 13 C.F.R. § 121.1001(a)(1)(iv). Compl. ¶ 29. Specifically, IMS was not an "interested party" pursuant to the SBA's regulations, which provide that:

> Other interested parties include large businesses where only one concern submitted an offer for the specific procurement in question. A concern found to be other than small in connection with the procurement is not an interested party unless there is only one remaining offeror after the concern is found to be other than small.

13 C.F.R. § 121.1001(a)(1)(iv). As IMS had been determined to be other than small, it was not an "interested party" because it was not the only remaining offeror. Accordingly, the SBA determined that IMS lacked standing. Compl. ¶ 29.

On November 2, 2007, in Size Determination Case No. 4-2008-4, the SBA Area Office held that Aegis was a small business, pursuant to the solicitation's size standard. Compl. ¶ 30.

On November 9, 2007, the GAO dismissed protests B-299315.4 and B-299315.5, filed by Torres against the award to Aegis. Compl. ¶ 31. On November 28, 2007, IMS filed this bid protest action in the Court of Federal Claims.

## ARGUMENT

### I. Standard Of Review

In ruling upon a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), the Court accepts as true the undisputed allegations in the complaint, and draws all inferences in favor of the plaintiff. Lavezzo v. United States, 74 Fed. Cl. 502, 507 (Fed. Cl. 2006) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). This Court reviews bid protest actions under the standards set forth in the Administrative Procedure Act ("APA"). See 28 U.S.C. § 1491(b)(4); Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001). In particular, the Court must determine whether the agency's actions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706. An award may be set aside, therefore, "if either: (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." Impresa, 238 F.3d at 1332 (citations omitted).

"A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not under the law entitle him to a remedy." Perez v. United States, 156 F.3d 1366, 1370 (Fed. Cir. 1998). In "evaluating a RCFC 12(b)([6]) motion, this court construes unchallenged allegations in the complaint in favor of the pleader." Trauma Service Group v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997). Furthermore, a "court may not assume that a plaintiff can prove facts that it has not alleged, or that defendant has violated laws in ways that plaintiff has not alleged." Brunetti v.

Rubin, 999 F.Supp. 1408, 1410 (D. Colo. 1998) (citing Associated General Contractors v. California State Council of Carpenters, 459 U.S. 519, 526 (1983)).

II. IMS Is Not An "Interested Party" And Lacks Standing To Protest The Award To Aegis

IMS lacks standing to protest the Army's award to Aegis as IMS is not an "interested party" pursuant to the Administrative Dispute Resolution Act ("ADRA"). The Army's procurement was restricted to small businesses as determined by NAICS code 54190.[2] Compl. ¶6. On March 2, 2007, in Size Determination Case Nos. 1-SD-2007-27, 28, the SBA determined that IMS was other than small. Compl. ¶ 19. IMS did not appeal the SBA decision to the SBA Office of Hearing Appeals ("OHA"). Moreover, IMS does not allege error in the SBA size determination. Accordingly, based solely upon the facts stated in IMS' complaint, IMS cannot be awarded the contract, and thus is not an "interested party" and lacks standing to bring this protest.

Standing is a threshold jurisdictional issue. Myers Investigative and Security Services, Inc. v. United States, 275 F.3d 1366, 1369 (2002). "The party invoking federal jurisdiction bears the burden of establishing the elements [of standing]." Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231, (1990)). Id.

This Court's jurisdiction to consider bid protests is conferred and defined by the Tucker Act, 28 U.S.C. § 1491(b). Specifically, the Court possesses:

> jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. . . .

[2] Defendant notes that the NAICS was actually 541930.

> without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C.§ 1491(b)(1) (emphasis added). To possess standing to pursue this bid protest, IMS must establish that it is an "interested party."

The Tucker Act does not define the term "interested party." The United States Court of Appeals for the Federal Circuit has determined that, in amending the Tucker Act, Congress "did not adopt the APA's liberal standing standards." Myers, 275 F.3d at 1370. Rather, the Federal Circuit adopted the definition of interested party contained in the Competition in Contracting Act ("CICA") which applies to bid protests filed with the GAO. Am. Fed'n of Gov't Employees v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001) (citing 31 U.S.C. § 3551). The court of appeals held that in bid protests pursuant to Tucker Act, "we . . . construe the term 'interested party' in section 1491(b)(1) in accordance with the [standing requirements of the] CICA and hold that standing under § 1491(b)(1) is limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." Id.; Accord Rex Service Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006).

Direct economic interest is deemed to be affected only where the protestor establishes that it had a "substantial chance" of securing the award absent a prejudicial defect in the process. Myers, 275 F.3d at 1369-70. "Substantial chance" means that the protestor was in the "zone of active consideration." Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999). Thus, protestors who did not submit proposals, withdrew from the procurement, or finished lower than second after evaluation do not have standing to protest the procurement. Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1334 (Fed. Cir. 2001).

Here, IMS has no chance of being awarded the contract for Army Linguist Translation and Interpretation Support because the contract is 100 percent set aside for small business, while IMS is other than small. Compl. ¶¶ 6, 19. Indeed, Aegis has been certified by the SBA to be small. Compl. ¶ 30. Moreover, Torres was not excluded as other than small and remains the next in line for award. Compl. ¶¶ 10, 26-28. Therefore, IMS cannot be awarded the contract, is not an "interested party" as defined by CICA, and lacks standing to protest the award to Aegis.

III. IMS Lacks Standing To Challenge The SBA's Size Determination With Regard To Aegis

IMS contends that the SBA should have considered evidence allegedly suggesting that the awardee, defendant-intervenor Aegis, was in an "ostensible subcontractor" relationship with another entity and therefore not a small business for purposes of the solicitation at issue. Even assuming that a bid protest can be based upon the conduct of the SBA, rather than the procuring agency, to succeed upon this theory IMS would be required to demonstrate that the SBA determination "involved a violation of regulation or procedure." Impresa, 238 F.3d at 1332; see also 5 U.S.C. § 706(2)(A),(E) (agency action should be set aside if it is "not in accordance with law" or is reached "without observance of procedure required by law"); 28 U.S.C. § 1491(b)(4). The Federal Circuit has explained that to proceed under this theory, "a disappointed bidder must show 'a clear and prejudicial violation of applicable statutes or regulations.'" Impresa, 238 F. 3d at 1333 (quoting Kentron Hawaii, Ltd. v. Warner, 480 F.2d 1166, 1169 (D.C. Cir. 1973)). As applied to this case, this standard would require, in the first instance, a showing that SBA clearly violated applicable regulations during the adjudication process by declining to consider the evidence of an ostensible subcontractor relationship. In considering whether such a violation has occurred, the Court must be mindful of the "respect that reviewing courts are required to accord to agencies in . . . their interpretation and application of procurement regulations." Latecoere

Int'l, Inc. v. United States, 19 F.3d 1342, 1355 (11th Cir. 1994) (describing the standard articulated in Kentron Hawaii).

As Impresa indicates, to prevail IMS would also be required to demonstrate that any error it has identified was prejudicial. 238 F. 3d at 1333. To meet this burden, IMS must prove that there was a "substantial chance" it would have received the contract award absent the alleged error. Banknote Corp., Inc. v. United States, 365 F.3d 1345, 1351 (Fed. Cir. 2004). Moreover, with regard to IMS' allegations that Aegis is other than small, the FAR unequivocally states that an award may be made based upon the size determination of the SBA Area Office. Thus, IMS is not an "interested party" as defined by CICA, with regard to Count II of its complaint, alleging that the SBA improperly evaluated the small business status of Aegis. Accordingly, IMS lacks standing to protest this award.

## IV. IMS' Allegation That Aegis Is Other Than Small Is Non-Justiciable

This Court possesses jurisdiction to consider determinations of the Small Business Administration ("SBA") that affect the award of a contract to an interested party. See, e.g., Mark Dunning Industries, Inc. v. United States, 60 Fed. Cl. 687 (2004) (remanding case to SBA for determination of whether it would have upheld protest concerning awardee's HUBZone status had it been timely filed); Three S Contractors v. United States, 13 Cl. Ct. 41, 45 (1987) (pre-ADRA) (reviewing size determination of OHA). However, exercise of the Court's jurisdiction is not warranted in this case, as IMS' protest cannot, as a matter of law, affect the award of the contract at issue in this case.

The United States Court of Appeals for the Federal Circuit has explained that "the existence of jurisdiction does not confirm the court's ability to supply relief." Murphy v. United States, 993 F.2d 871, 872 (Fed. Cir. 1993). Rather, the Court's ability to grant relief also

depends upon "whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded." Id. (citing Baker v. Carr, 369 U.S. 186, 198 (1962)). A dispute is not justiciable if a court lacks the ability to supply relief. Mercer v. United States, 52 Fed. Cl. 718, 723 (2002). Here, the Court cannot supply relief to IMS because, in light of the procedural posture of its appeal to the SBA, any new determination as to Aegis' status as a small business would not affect the existing award of the contract.

Subpart 19.3 of the Federal Acquisition Regulations ("FAR") and title 13, part 121 of the Code of Federal Regulations ("Small Business Size Regulations") govern the procedures through which an interested party may challenge an awardee's self-certification concerning its small business status. Upon receipt of a challenge by an interested party (such as a competing bidder), the contracting officer is required to forward the challenge to the local SBA Governing Contracting Area Office. FAR § 19.302(c); see also 13 C.F.R. § 121.1006. Within ten business days of receiving a challenge, the Area Office must "determine the size status of the challenged concern and notify the contracting officer, the protestor and the challenged offer of its decision by certified mail, return receipt requested." Id. § 19.302(g)(1); see also 13 C.F.R. § 121.1009. Notably, an award may be made based upon the size determination of the area office. FAR § 19.302(g)(2).

At this point, an interested party has a limited right of appeal to OHA, which has the authority to overrule the area office's determination. However, the FAR is clear that an award made upon the basis of an area office determination will not be affected by an appeal to OHA unless the contracting officer has received notice of the appeal prior to award. Id. § 19.302(g)(2) ("If an award was made before the time the contracting officer received notice of the appeal, the

contract shall be presumed to be valid."). The FAR further specifies that only those decisions of OHA received prior to award (i.e., if the contracting officer suspends the award pending the OHA determination) will affect the acquisition in question: "The SBA decision, if received before award, will apply to the pending acquisition. SBA rulings received after award shall not apply to that acquisition." Id. § 19.302(i).

Several reported decisions confirm the limited effect of OHA proceedings commenced after the award of a contract. In Chapman Law Firm v. United States, 63 Fed. Cl. 25 (2004), the court found that when a protester did not file an appeal of its size determination before contract award, and the SBA OHA did not issue a decision before the award of the contract, the award is unchallengeable upon SBA size determination grounds pursuant to FAR 19.302(g)(2), and that the court could not provide relief to the protester. Chapman, 63 Fed. Cl. at 35. Accordingly, the court held that the petitioner's challenge was non-justiciable. Id. In Tech Systems, Inc., 2001 WL 399860, No. SIZ-4425 (S.B.A. Feb. 15, 2001), award of the contract at issue was made on December 18, 2000. A disappointed bidder filed a size protest with SBA and, following an adverse determination by the area office, appealed to OHA on January 23, 2001. OHA dismissed the appeal as moot "because the contracting officer awarded the solicitation prior to the appeal," explaining:

> the Federal Acquisition Regulation provides that an Area Office determination is final unless and until two conditions are satisfied: it is appealed and the Contracting Officer is notified of the appeal before award. 48 C.F.R. § 19.302(g)(2). If the Contracting Officer is not notified of the appeal to OHA before award, "the contract shall be presumed to be valid." Id. Finally, a decision by this Office received after award does not apply to that solicitation. 48 C.F.R. § 19.302(i); Size Appeal of Golden North Van Lines, Inc.,

> SBA No. SIZ-4304, at 4 (1998). Hence, under these facts, the size determination is final, and the contract is valid.

Id.

Similarly, in Longview Construction Co., 1986 WL 63444, B-222,519, 86-1 CPD ¶ 408 (Comp. Gen. Apr. 25, 1986), the GAO dismissed the protest of a bidder that sought to withhold the award of a contract pending the appeal of SBA's initial determination that it was not a small business concern. Relying upon FAR § 19.302(i), the GAO determined that the Department of Energy could make an award without awaiting the appeal of the bidder's size determination. Id.; see also Delaney Constr. Corp. v. United States, 56 Fed. Cl. 470, 475 (2003) (citing FAR § 19.302(j) and Mid-West-Constr., Ltd. v. United States, 181 Ct. Cl. 774, 387 F.2d 957 (1968),[3] for the proposition that "post-award protest and small business size determination that [awardee's] certification was erroneous does not impact the legality of the prior award").

Several cases have distinguished the court’s holding in Chapman based upon the specific facts of those procurements; however, the facts in this case are even more compelling than in Chapman. Mark Dunning Industries, Inc. v. United States, 64 Fed. Cl. 374 (2005) involved a historically underutilized business zone (“HUBZone”) contract. The court declined to follow Chapman as challenges to HUBZone status are subject to FAR § 19.306, which does not contain the requirement, found in FAR § 19.302, that a size appeal be made before the contract is awarded. Id. at 377. Client Network Services, Inc. v. United States, 64 Fed. Cl. 784 (2005), involved a solicitation where the protester was found to be other than small, and immediately appealed the size determination to OHA, which overturned the area office size determination and

[3] The Court of Claims's decision in Mid-West relies in large part upon Federal Procurement Regulations that have been substantially amended. Nonetheless, much of the court's analysis in Mid-West is instructive.

found the protester to be small. Id. at 789. The court distinguished Chapman based upon the "markedly different fact pattern" and found that the protester possessed standing, as it had filed its appeal to the OHA months before award of the contract. Id. In LB & B Associates Inc. v. United States, 68 Fed. Cl. 765 (2005), the request for proposal for the task order at issue required re-certification of small business status prior to award. The court distinguished Chapman as the LB&B case involved a request to vacate an OHA decision which had been issued prior to award of the task order. Id. 771.

Clearly, IMS does not present any of the special circumstances presented in the cases that distinguished the court's holding in Chapman. In fact, the procedural posture in this case presents a more compelling set of facts than Chapman for a finding of non-justiciability. Here, the SBA held that IMS was not an interested party, and did not have standing to challenge Aegis' size. Compl. ¶ 29. The SBA's regulations clearly provide that IMS is not an interested party, as it was determined in this procurement to be other than small, and it was not the only remaining bidder. Specifically, the SBA regulations provide that:

> Other interested parties include large businesses where only one concern submitted an offer for the specific procurement in question. A concern found to be other than small in connection with the procurement is not an interested party unless there is only one remaining offeror after the concern is found to be other than small.

13 C.F.R. § 121.1001(a)(1)(iv).

IMS did not appeal the SBA Area Office dismissal of its size protest, for lack of standing, to the OHA. Moreover, Torres did not appeal the area office determination that Aegis was small to the OHA. The contracting officer awarded the contract to Aegis on or about September 21, 2007, and there was no appeal to OHA pending on that date. Compl. ¶ 23.

Under these circumstances, the FAR clearly directs that any decision reached by OHA, or an area office, would not affect the award of the contract. Instead, any determination made by OHA after September 21, 2007, would be prospective in nature only. FAR 19.302(i). As a result, any remand, or corrective action ordered by the Court could not, as a matter of law, affect the procurement at issue in this case. Because, as described above, the ability to affect the procurement is the sole basis upon which the Court's jurisdiction rests, it follows that there is no remedy that the Court can order within the constraints of its limited jurisdiction. The matter is therefore not justiciable.

Finally, we acknowledge that a rule that prevents OHA or the Court from rectifying an alleged error in an area office determination could potentially undermine the goals that small business preferences are designed to further. However, three additional considerations mitigate the effects of this concern. First, even if it cannot disturb a prior award, an after-award appeal to OHA is not an academic exercise because it can affect future procurements. See Mid-West, 387 F.2d at 963. Second, to the extent IMS had standing to challenge Aegis' self-certification as a small business, IMS could have avoided the justiciability problem it now faces had it promptly appealed the area office size determination. Moreover, a rule of finality is necessary to further the Government's interest in promptly obtaining the services for which it has issued a solicitation. As the Court explained in Mid-West,

> We recognize [that the Court's interpretation of the regulation at issue] creates some strain with the major policy of the Small Business Act, in that an award of a small business set-aside to an unqualified concern will deprive an eligible small businessman of a Government contract. But those who administer the Act have plainly decided that the Congressional policy favoring small business was not expected to be enforced to the exclusion of all other interests. [. . .] Congress must be taken to have anticipated that general procurement interests would be given their place. In

> this instance, the serious risk of after-award cancellations resulting from the Government's interpretation of the regulation would be detrimental to contractors, but would work to the disadvantage of Government procurement activities. Contracting officers must sometimes act with great dispatch in order to protect the public, as well as the specifically governmental, concern.

387 F.2d at 963. These considerations help ensure, even if the Court in this particular instance cannot, that the goals underlying small business preference program are both considered and properly weighed against other competing interests within the procurement process.

## V. By Submitting A Bid As A Small Business, IMS Has Waived Its Right To Challenge The Small Business Set Aside

IMS alleges that the award to Aegis was improper because the solicitation should not have been set-aside for small business. Compl. ¶¶ 37, 40. IMS has waived its right to challenge this issue by submitting a bid as a small business. By statute, an agency is required to evaluate offers and make an award based solely upon the evaluation criteria set forth in the solicitation. 10 U.S.C. § 2305(b)(1). The GAO has long recognized that protests based upon alleged improprieties apparent in the solicitation must be filed prior to the solicitation closing date. See 4 C.F.R. 21.2 (a)(1); FAR 33.103(e). Moreover, the United States Court of Appeals for the Federal Circuit has explicitly held that, if a party fails to object to a patent error in a solicitation prior to the solicitation closing time, it waives its ability to raise the objection subsequent to the solicitation closing date. Blue & Gold Fleet, L.P., 492 F. 3d 1308, 1313 (Fed. Cir. 2007); see also Moore's Cafeteria Services, d/b/a MCS Management, 77 Fed. Cl. 180 (2007). In this case, IMS was well aware that the solicitation was 100 percent set aside for small business, and submitted a bid self-certifying that it was a small business. Compl. ¶¶ 6, 9. IMS did not protest the small business set aside until after the solicitation was closed and the contract was awarded to Aegis. Obviously, had the Army's award to IMS not been overturned based upon the SBA's

finding that IMS was other than small, IMS would not be raising this challenge. IMS made a decision to bid upon the solicitation as a small business, and now seeks a second chance to compete for the contract, this time under full and open competition.

On June 30, 2006, the Army issued this solicitation. Compl. ¶ 5. IMS admits that the solicitation was restricted to small businesses. Compl. ¶ 6. Thus, IMS has known for nearly a year and a half that the solicitation was set-aside for small business. Despite this notice of the small business set aside, IMS did not file a pre-award protest of the terms of the solicitation. Instead, IMS self-certified that it was a small business, and submitted a bid. Compl. ¶ 9. After being awarded the contract, IMS was determined by the SBA to be other than small, and the Army rescinded its award to IMS. Compl. ¶¶ 19, 21. IMS did not appeal that size determination, and does not allege any error by the SBA with regard to that size determination.

IMS' size protest to the SBA with regard to Aegis and Torres was dismissed on October 26, 2007, and IMS did not appeal to the OHA. In fact, IMS took no action until filling this bid protest on November 28, 2007. This protest was filed well after the Army's award to Aegis on or about September 21, 2007. Because no party protested prior to the solicitation closing date that the solicitation had been set-aside for a small business, the contracting officer was bound by statute to consider only offers submitted by small businesses. 41 U.S.C. § 416(b) (4); <u>also</u> <u>see</u> 10 U.S.C. 2304; <u>Blue & Gold Fleet, L.P.</u>, 492 F. 3d at 1313. As a result, IMS has clearly waived its right to protest the contracting officer's determination and its protest should be dismissed as untimely. <u>Blue & Gold Fleet, L.P.</u>, 492 F. 3d at 1313; <u>Moore's Cafeteria Services, d/b/a MCS Management</u>, 77 Fed. Cl. 180 (2007).

As in <u>Blue & Gold Fleet</u>, IMS had notice of the agency's actions from the face of the solicitation, which explicitly states that it was a small business set aside. If IMS believed that

the agency decision to set aside the solicitation for small business was improper, it could have filed a protest or made an inquiry to the agency prior to the solicitation closing date. Had IMS done so, the agency would have had an opportunity to explain itself or alter the situation, if justified. However, IMS chose not to protest, perhaps for purely tactical reasons, and now seeks to convert the solicitation to full and open competition.

IMS should not be permitted a second bite at the apple as a result of its decision to submit a bid, self-certifying itself as a small business, in response to the solicitation, and then to protest the Army's solicitation as improperly set aside for small businesses. Underlying Blue & Gold Fleet is the policy consideration that contractors not be permitted to rest upon their protest rights, submit an offer, and wait until it discovers whether it receives the award only then to bring a protest if it is unhappy with the outcome. See Blue & Gold Fleet, 492 F.3d at 1314. Such a delay is unfair to the competitive process and highly inefficient. The practice only serves to delay delivery of needed supplies to the Government, in this case critical linguists for the armed forces to conduct operations in Afghanistan, and costs the agency and other offerors significant time, effort, and money to defend or recompete otherwise final contract awards. See id.

## CONCLUSION

For the reasons stated above, defendant respectfully requests that this Court dismiss plaintiff's complaint for lack of jurisdiction, as IMS is not an interested party, and lacks standing to bring this action. Additionally, this Court should dismiss IMS' complaint for failure to state a claim, as it seeks review of nonjusticiable issues, and attempts to challenge the terms of the solicitation post-award.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

s/ David D'Alessandris
DAVID D'ALESSANDRIS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
(202) 307-0139

December 6, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on December 6, 2007 a copy of foregoing "DEFENDANT'S MOTION TO DISMISS FOR LACK OF STANDING AND NON-JUSTICIABILITY" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/David D'Alessandris