**REDACTED VERSION**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 07-831 C
(Judge Sweeney)

INTERNATIONAL MANAGEMENT SERVICES, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

AEGIS, MISSION ESSENTIAL PERSONNEL LLC,

Defendant-Intervenor.

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Richard D. Lieberman
McCarthy, Sweeney & Harkaway, PC
2175 K Street NW, Suite 600
Washington, DC 20037
202-775-5560
Fax: 202-775-5574

Counsel to Plaintiff, International Management Services, Inc.

December 12, 2007

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....... iii-iv

STATEMENT OF THE ISSUES ....... 2

STATEMENT OF FACTS ....... 3

ARGUMENT ....... 3

I. STANDARD OF REVIEW ....... 3

II. ALL OFFERORS IN THE COMPETITIVE RANGE OF THIS PROCUREMENT WERE OTHER THAN SMALL, INCLUDING AEGIS AND TORRES, WHO PROPOSED USING OSTENSIBLE SUBCONTRACTOR(S) ....... 3

A. The Ostensible Subcontractor Rule ....... 3

B. The SBA View of This Procurement ....... 6

C. Aegis's Proposal and Its Negotiations with the Army Demonstrate Its Undue Reliance on Its Large Subcontractors ....... 6

1. [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

E. Conclusion – Small Business Set Asides Are Being Undermined ....................17

III. IMS IS AN INTERESTED PARTY AND HAS STANDING....................19

IV. THIS ACTION IS JUSTICIABLE ....................24

V. IMS DOES NOT CHALLENGE THE 2006 SMALL BUSINESS SET ASIDE OF THE ARMY....................25

CONCLUSION....................26

CERTIFICATE OF FILING....................27

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Brown & Son Elec. Co. v. United States, 325 F.2d 446 (Ct. Cl. 1963)........................................25

Compliance Corp. v. United States, 22 Cl. Ct. 193 (Fed. Cir. 1990) ..........................................20

First Hartford Corp. Pension Plan & Trust v. United States,
194 F.3d 1279 (Fed. Cir. 1999)..........................................................................................25

Impresa Construzioni Geom. Domenico Garufi v. United States,
238 F.3d 1324 (Fed. Cir. 2001)...................................................................................21, 22

John Reiner & Co. v. United States, 325 F.2d 438 (Ct. Cl. 1963)...............................................25

Massie v. United States, 226 F.3d 1318 (Fed. Cir. 2000)...........................................................25

NKF Eng'g v. United States, 805 F.2d 372 (Fed. Cir. 1986) .......................................................20

Northrup Grumman Corp. v. United States, 50 Fed. Cl. 443 (2001)...........................................22

Phoenix Air Group, Inc. v. United States, 46 Fed. Cl. 90 (2000)................................................23

Rex Serv. Corp. v. United States, 448 F.3d 1305 (Fed. Cir. 2006) .............................................20

Statistica, Inc. v. Christopher, 102 F.3d 1577 (Fed. Cir. 1996)...................................................20

United Int'l Investigative Servs., Inc. v. United States, 41 Fed. Cl. 312 (1998) ..........................20

United States v. Amdahl Corp, 786 F.2d 387 (Fed. Cir. 1986) ...................................................25

Wetsel-Oviatt Lumber Co. v. United States, 43 Fed. Cl. 748 (1999)....................................20, 21

**ADMINISTRATIVE DECISIONS**

ALATEC, Inc., B-298730, 2006 WL 3691186 December 4, 2006 .............................................21

B&M Constr., Inc., SBA No. SIZ-4805 (2006)..............................................................5, 6

Bus. Control Sys., Inc., SBA No. SIZ-3959 (1994)..............................................................4

CardioMetrix, Inc., SBA No. SIZ-4051 (1995) ..............................................................5

**Page(s)**

Data Based Decisions, Inc., B-232663.2, 89-1 CPD ¶ 87
January 26, 1989 ....................................................................................................25

ePerience, Inc., SBA No. SIZ-4668 (2004) ....................................................................5

Gen. Maint. Eng'g, Inc., SBA No. SIZ-4405 (2000).........................................................5

Info-Tech Enter., SBA No. SIZ-4346 (1999) ...............................................................4, 5

Leonardo Techs., Inc., SBA No. SIZ-4597 (2003)...........................................................5

SecTek, Inc., SBA No. SIZ-4558 (2003)...........................................................................4

Spectrum Security Services, Inc., B-297320.3, 2005 CPD ¶ 227
December 29, 2005 .................................................................................................21

Stellar Industries, Inc., B-218287, 85-1 CPD ¶ 616
May 30, 1985 .........................................................................................................25

The Analysis Group, L.L.C., SBA No. SIZ-4814 (2006)..................................................4

Tiger Enterprises, Inc., B-293439, 2004 CPD ¶ 19
January 20, 2004 ....................................................................................................21

**STATUTES AND REGULATIONS**

13 C.F.R. § 121.103(h)(4)..............................................................................................3, 4

13 C.F.R. § 121.1003 .........................................................................................................19

13 C.F.R. § 121.1004(b) .....................................................................................................19

28 U.S.C. § 1491(b)(1) .............................................................................................19-20, 24

28 U.S.C. § 1491(b)(2) .......................................................................................................25

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**BID PROTEST**

**REDACTED VERSION**

| | | |
|---|---|---|
| INTERNATIONAL MANAGEMENT SERVICES, INC. | ) | |
| Plaintiff, | ) | |
| v. | ) | CFC No. 07-831C |
| THE UNITED STATES | ) | Judge Sweeney |
| Defendant, | ) | |
| and | ) | |
| AEGIS MISSION ESSENTIAL PERSONNEL, LLC | ) | |
| Defendant-Intervenor | ) | |

**OPPOSITION TO MOTION TO DISMISS**

Pursuant to the Court's Order dated December 3, 2007, Plaintiff respectfully submits its opposition to Defendant's Motion to Dismiss for Lack of Standing and Non-Justiciability ("Mo. To Dism."). This action is not a protest of a size determination or a solicitation; rather, it is a prayer that the Court maintain the integrity of the government procurement process by ensuring that businesses that are *other than small* not be awarded a contract set aside for small business under the Small Business Act. Plaintiff International Management Services, Inc. ("IMS") has standing because none of the offerors within the competitive range are small businesses, as explained herein. Accordingly, IMS meets this circuit's test for standing because it would be a prospective bidder on a corrected (full and open) procurement, its direct economic interest would

be affected by the award of the contract; and but for error by the Army and the Small Business Administration ("SBA"), there is a substantial chance that it would receive award. This matter is justiciable as the Court can grant the relief requested by suspending or terminating Aegis Mission Essential Personnel LLC's ("Aegis") contract for convenience of the government. Finally, IMS's action herein is not a challenge to the solicitation; rather, it is a request for this Court to ensure the integrity and fairness of the procurement process.

## STATEMENT OF THE ISSUES

As explained herein, the Mo. To Dism. has inaccurately characterized this action, and seeks dismissal for reasons that are not present here. This Opposition will show that (1) IMS has standing to protest the Army's award because it meets all of the tests established by the relevant statutes conferring standing; (2) this complaint must apply to the present procurement because it complains of a significant defect affecting the integrity of the procurement process, and this Court has statutory authority to grant the appropriate relief; (3) IMS is not protesting the original solicitation, but rather the failure of the procurement process itself; and (4) all offerors in the competitive range of this procurement are other than small businesses.

The purpose of IMS's bid protest is to ensure that the statutory requirements in the Small Business Act, as implemented in the Federal Acquisition Regulation ("FAR"), are complied with. IMS has standing to bring this protest because there were and are no small businesses in the competitive range of this procurement, which was set aside exclusively for small business. The Army and the SBA both ignored their duties to raise obvious size issues, of which they were fully aware, and made award to Aegis, which is other than a small business, in direct contravention of these duties. The only other offeror remaining, Torres Advanced Solutions ("Torres") is also other than a small business as explained herein.

## STATEMENT OF FACTS

Plaintiff adopts by reference the facts as set forth in its Complaint, and on pages 2-5 of the Defendant's Mo. To Dism.

## ARGUMENT

### I. STANDARD OF REVIEW

Plaintiff adopts by reference the standard of review set forth in the Mo. To Dism. at 5-6.

### II. ALL OFFERORS IN THE COMPETITIVE RANGE OF THIS PROCUREMENT WERE OTHER THAN SMALL, INCLUDING AEGIS AND TORRES, WHO PROPOSED USING OSTENSIBLE SUBCONTRACTOR(S)

Primarily because of the "ostensible subcontractor" rule of the SBA, all four offerors within the competitive range for this procurement are other than a small business. Thomas Computer Solutions, LLC ("TCS") was adjudicated as other than small by the SBA[1] on January 8, 2007. Compl. at ¶ 14. IMS was adjudicated not small primarily because of an ostensible subcontractor on March 7, 2007. Compl. at ¶ 19. As explained herein, neither of the other two offerors, Aegis or Torres, is a small business.[2]

#### A. The Ostensible Subcontractor Rule

SBA regulations define an ostensible subcontractor as "a subcontractor that performs primary and vital requirements of a contract . . . or a subcontractor upon which the prime contractor is <u>unusually reliant</u>."[3] In determining whether such a relationship exists the regulations demand that:

> [a]ll aspects of the relationship between the prime and subcontractor [be] considered, including, but not limited to,

---

[1] This was based on TCS's average annual receipts, not on the ostensible subcontractor rule. However, IMS believes that TCS also proposed one or more ostensible subcontractors.
[2] The SBA determined that Aegis was "small," however the SBA never considered Aegis's ostensible subcontractor(s). Compl. at ¶ 30.
[3] 13 C.F.R. § 121.103(h)(4) (emphasis added).

> the terms of the proposal (such as contract management, technical responsibilities, and the percentage of subcontracted work), agreements between the prime and subcontractor (such as bonding assistance or the teaming agreement), and whether the subcontractor is the incumbent contractor and is ineligible to submit a proposal because it exceeds the applicable size standard for that solicitation.[4]

If a subcontractor is, in fact, an ostensible subcontractor, then the subcontractor and the prime contractor are treated as joint venturers, and therefore affiliates, for size determination purposes.[5] This rule "prevent[s] other than small firms from forming relationships with small firms to evade SBA's size requirements."[6]

The SBA's Office of Hearing and Appeals ("OHA") has expressed additional indicia of a prime contractor's "unusual reliance" on a subcontractor, including:

- where a proposal repeatedly identifies the prime and subcontractor as a "team;"[7]
- where a proposal fails to identify which discrete functions are to be performed by the subcontractor;[8]

---

[4] Id.
[5] Id.
[6] Size Appeal of The Analysis Group, L.L.C., SBA No. SIZ-4814 (2006).
[7] See Size Appeal of SecTek, Inc., SBA No. SIZ-4558 (2003) ("One factor this Office has consistently held to support a finding of unusual reliance is that the proposal constantly identifies the two concerns as to a team. . . . as though it were a single, separate entity apart from its parent corporations. . . . Under these circumstances, this language is an exceptionally strong indicator of unusual reliance . . . .").
[8] See Size Appeal of Info-Tech Enter., SBA No. SIZ-4346 (1999) ("Appellant's own proposal . . . enumerates many discrete tasks which the team . . . will perform. Yet Appellant has made no effort to identify which tasks each firm will perform, even though this information must be available. Accordingly, I must take its failure to make such an identification as a strong indicium of undue reliance."); Size Appeal of Bus. Control Sys., Inc., SBA No. SIZ-3959 (1994) ("[T]he Cost and Technical Proposal here fails to identify discrete functions to be performed by [the subcontractor] . . . and is, an integrated "team" approach to the tasks to be performed. Thus, when the totality of circumstances are considered, the record demonstrates that [the contractor] is unduly reliant and dependent upon [the subcontractor] . . . .).

- where the prime contractor assigns the most complex and costly tasks to its subcontractors;[9]
- where a significant number of key personnel needed to perform primary and vital requirements of the contract are provided by the subcontractor, rather than the prime contractor;[10]
- where the subcontractor is the incumbent and where the prime contractor will hire a substantial number of the incumbent's employees;[11]
- where the subcontractor participates in the contract's management;[12]
- where the prime contractor lacks and the subcontractor possesses the qualifications relevant to the contract requirements;[13]
- where the prime contractor is inexperienced in the primary and vital requirements of the solicitation.[14]

---

[9] See Size Appeal of Leonardo Techs., Inc., SBA No. SIZ-4597 (2003) ("Among the methodologies SBA has used [in determining whether a contractor is engaged in a joint venture] is the so-called 'seven factors test.' These factors [include which] party [is] performing the more complex and costly contract functions.").
[10] See Size Appeal of B&M Constr., Inc., SBA No. SIZ-4805 (2006) ("OHA has often affirmed size determinations where an area office determined that key personnel were subcontractor employees or that key tasks were to be performed by subcontractor employees.").
[11] Size Appeal of Gen. Maint. Eng'g, Inc., SBA No. SIZ-4405 (2000).
[12] See Size Appeal of ePerience, Inc., SBA No. SIZ-4668 (2004) ("[The subcontractor] will thus not merely be managing its own subcontract, but playing a role in the management of the overall contract. This participation in management is a strong indicia of unusual reliance upon the ostensible subcontractor.").
[13] See Size Appeal of Info-Tech Enter., SBA No. SIZ-4346 (1999) ("Notwithstanding Appellant's assertion that all the incumbent employees will be under the control of Appellant . . . Appellant is nonetheless relying on the qualifications of its incumbent subcontractor to perform the primary and vital requirements of the solicitation.").
[14] See Size Appeal of CardioMetrix, Inc., SBA No. SIZ-4051 (1995) ("Appellant's own submission fails to show that it is experienced in laboratory testing, and in transporting the laboratory samples involved. Thus, since the primary and vital requirements of the solicitation are for laboratory testing, and to a lesser extent, delivery . . . Appellant will, of necessity, be "unusually reliant" upon the services of its large subcontractor.")

An examination of the proposals of both Aegis (which received award) and Torres' (the only other contractor remaining in the competition) demonstrates that both bear many, if not all, of the above indicia of unusual reliance. This unusual reliance on their respective subcontractors violates the ostensible contractor rule, necessitates a finding of affiliation, and results in both Aegis and Torres exceeding the size standard for this solicitation.

**B. The SBA View of This Procurement**

In its size determination of IMS, the SBA expressed its skepticism that offerors could submit proposals to INSCOM as small businesses because of the inherent need for subcontracting required by a procurement of this size and complexity, and because of the ostensible subcontracting rule. SBA stated as follows:

> This contract proposes a minimum of $10 million and a maximum of over $703 million. It is clear that but for the subcontractors, this firm would not even be considered for this contract. (SBA also notes that with a size standard of $6.5 million, it is not surprising that a small business would be forced to rely heavily on its larger subcontractors.) See Size Appeal of B&M Construction, Inc., No. 4805 (2006), holding that "[u]nder the ostensible subcontractor rule, a concern is unusually reliant on its subcontractors when the dominant basis of a concern's ability to submit an offer and qualify for a contract is the qualifications and experience of its two principal subcontractors.[15]

This comment should have served as a red flag to both the Army and SBA that all offerors could have a serious ostensible subcontractor problem.

**C. Aegis's Proposal and Its Negotiations with the Army Demonstrate Its Undue Reliance on Its Large Subcontractors**

[redacted]

---

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

---

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

| [redacted] | [redacted] | [redacted] |
|---|---|---|
| | | |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |

---

[redacted]

| | | |
|---|---|---|
| | | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

---

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

---

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

---

[redacted]

[redacted]

[redacted]

[redacted]

---

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

---

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

---

[redacted]

[redacted]

**E. Conclusion - Small Business Set Asides Are Being Undermined**

The AR demonstrates beyond doubt that Aegis, the awardee, and Torres, the only other alleged "small business" within the competitive range, are actually other than small businesses because of their ostensible subcontractors. These facts were well known to the Army which evaluated both of these proposals. Furthermore, IMS submitted size status protests of both Torres and Aegis to the Contracting Officer and to the SBA, alleging that both companies have ostensible subcontractors for this procurement.[57] However, even though the SBA dismissed the protests on October 26, 2007 for lack of standing,[58] both the SBA and the Contracting Officer were aware of the ostensible subcontractor issues for Torres and Aegis. Despite this knowledge,

[redacted]

[57] Complaint ¶ ¶ 24, 25.
[58] Compl. ¶ 29.

neither the SBA nor the Contracting Officer took any action to investigate the existence of ostensible subcontractors, which they are obliged to do.

IMS further believes that this procurement may be a purposeful undermining of a small business set-aside. Consider these facts:

- On February 6 & 7, 2007, Torres and Aegis filed size protests alleging that IMS was not small due (in part) to IMS's undue reliance upon WorldWide Language Resources, Inc. ("WWLR") pursuant to the ostensible subcontractor rule. Comp. at ¶¶ 16-17. It is clear from this size protest that both Torres and Aegis are well aware of the ostensible subcontractor rule.

- On March 2, 2007, SBA found IMS to be other than small due to IMS's affiliation with WWLR and to the ostensible subcontractor rule. Compl. at ¶ 19.

- On September 21, 2007, the Army awarded the contract to Aegis. Compl. at ¶ 23.

- On October 3, 2007 and again on October 9, 2007, Torres protested the award to Aegis at the GAO. Compl. at ¶¶ 26-27. These protests were docketed as B-299315.4 & B-299315.5. AR Tab 273 at 16473.

- On October 18, 2007, Torres filed a size protest of Aegis, alleging receipts in excess of the applicable size standard and affiliation with other entities, but <u>not</u> alleging that Aegis had any ostensible subcontractors. Compl. at ¶ 28.

- On November 2, 2007, the SBA held that Aegis was a small business, pursuant to the solicitation’s size standard. The ostensible contractor issue was <u>not</u> examined by the SBA. Compl. at ¶ 30

.

- On November 8, 2007, Torres advised the GAO that "the parties <u>have reached a settlement</u> whereby Torres Advanced Enterprise Solutions has agreed to withdraw the above reference protests [B-299315.4 & B-299315.5] with prejudice. We hereby withdraw the protests and request that you close the file on this matter." AR Tab 273 at 16473 (emphasis added).

- On November 9, 2007, the GAO dismissed both Torres protests (B-299315.4 & B-299315.5). AR Tab 273 at 16474.

When it protested IMS's size, both Torres and Aegis asserted that IMS was relying on an ostensible subcontractor. After IMS was eliminated from competition (in part because of the ostensible subcontractor rule) and only two offerors (Aegis and Torres) remained, the Army

awarded the contract to Aegis. Within ten days of that award, Torres submitted two protests to the GAO, alleging problems with the INSCOM process. Shortly thereafter, Torres submitted a size protest to the Contracting Officer[59] but, this protest never asserted that Aegis was using an ostensible subcontractor. This may have been because Torres suffered from the same infirmity in its own offer (an ostensible subcontractor) and did not want the Army Contracting Officer to raise that issue in his own size protest.[60] Two weeks later (November 2, 2007), the SBA ruled that Aegis was small, although it never considered Aegis's ostensible subcontractors. Within a week of that ruling, Torres reached a settlement and withdrew both GAO protests.

This sequence of events suggests that there may be a post-award business arrangement between Torres and Aegis (two large businesses, both with ties to the large business incumbent L-3 Communications/Titan) that thwarts the purposes of the small business set-aside system by permitting a large business to keep an award set aside for small business. Although IMS makes no allegations, these contractors appear to be seeking to shield this improper award from further GAO, SBA or Court review. Protester does not know the substance of the "settlement" reported to the GAO by Torres, but it should be examined by this Court.

## III. IMS IS AN INTERESTED PARTY AND HAS STANDING

Defendant challenges IMS's standing, asserting it is not an "interested party" pursuant to the Administrative Dispute Resolution Act ("ADRA") and the Tucker Act. This matter must be addressed by examining the requisites for a bid protester's standing.

Pursuant to 28 U.S.C. § 1491(b)(1), this Court possesses:

> [j]urisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a

[59] The contracting officer is required to forward the protest to the SBA. 13 C.F.R. § 121.1003.
[60] A contracting officer may protest an offeror or awardee's size status at any time before or after award. 13 C.F.R. § 121.1004(b).

> proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or proposed procurement…without regard to whether suit is instituted before or after the contract is awarded.

The Court of Appeals for the Federal Circuit has held that to come within the §1491(b)(1) protest jurisdiction, a protester is required to establish that it is an actual or prospective bidder, and possess the requisite direct economic interest.[61] A protester must also establish competitive prejudice, which is accomplished by demonstrating that "but for the alleged error, there was a substantial chance that [it] would receive an award."[62]

Plaintiff meets all of the standing requirements. Defendant does not understand the nature of this bid protest. IMS is not challenging the SBA's size determinations of Aegis on an isolated basis. The SBA size rules are inapplicable to the Court's consideration of this protest. Rather, IMS challenges any award to either Aegis or Torres because neither is a small business when evaluated in conjunction with their ostensible subcontractors. IMS also challenges the fact that the SBA and the Army failed their duties and obligations to challenge and review Aegis's size status in the context of the ostensible subcontractor rule. This failure results in an undermining of the integrity of the procurement process which must be corrected by this Court, since it results in award of a set-aside to a business other than small.[63] The GAO has repeatedly echoed this

---

[61] Rex Serv. Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006).
[62] Statistica, Inc. v. Christopher, 102 F. 3d 1577, 1581 (Fed. Cir. 1996) (emphasis in original).
[63] This Circuit has frequently upheld the need for the Court to ensure the integrity of the procurement process. See, e.g., NKF Eng'g v. United States, 805 F.2d 372, 377 (Fed. Cir. 1986) (holding that agency may disqualify a firm because of appearance of impropriety which implicates the integrity of the bidding system); United Int'l Investigative Servs., Inc. v. United States, 41 Fed. Cl. 312, 323 (1998) ("the public has a strong interest in preserving the integrity of the procurement process"); and Compliance Corp. v. United States, 22 Cl. Ct. 193, 204 (1990) (holding that agency may disqualify those who engage in industrial espionage to protect the integrity of the contracting process); see also Wetsel-Oviatt Lumber Co. v. United States, 43 Fed. Cl. 748, 753 (1999) (noting that "where the federal procurement process is tainted by arbitrary

sentiment and supported the need to uphold the integrity of the Small Business Act by not permitting large businesses to perform small business set-asides.[64]

A compelling reason for this Court to find that IMS has standing is a case cited by Defendant, Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324 (Fed. Cir. 2001) ("Garufi"). In that case, at both the GAO and the Court of Federal Claims, Garufi protested its loss of a contract, challenging the Navy's evaluation, its elimination from the competitive range, and the Navy's award to another contractor, JVC. The GAO denied Garufi's protest, and subsequently, the Court of Federal Claims denied it as well. In its decision, the Court of Federal Claims determined that the elimination of Garufi from the competitive range was within the contracting officer's discretion, and then held that Garufi lacked standing to challenge the award to JVC because Garufi was not an interested party since it "would not have been in a position to receive the award if JVC had been disqualified."[65] The Federal Circuit reversed on the standing issue, holding that Garufi had a substantial chance of receiving award, an economic interest to challenge the award, and standing to bring its bid protest.[66]

In its Mo. To Dism., Defendant properly cites Garufi, 238 F. 3d at 1334, for the proposition that "protestors who did not submit proposals, withdrew from the procurement, or finished lower than second after evaluation do not have standing to protest the procurement." Mo. To Dism. at 7. However, Defendant overlooks the rest of the cited paragraph, which is directly applicable to IMS's action. It states:

---

and capricious government action, the public interest is served by restoring integrity to the procurement process.”).

[64] See ALATEC Inc., B-298730, Dec. 4, 2006, 2006 WL 3691186 at *21; Spectrum Sec. Servs., Inc., B-297320.3, Dec. 29, 2005, 2005 CPD ¶ 227 at *943; Tiger Enter., Inc., B-293439, Jan. 20., 2004, 2004 CPD ¶ 19 at *3023.

[65] Garufi, 238 F.3d at 1330. Notwithstanding its holding on Garufi's standing, the Court of Federal Claims reached the merits. Id.

[66] 238 F. 3d at 1334.

> In this case, as the government has conceded at oral argument, if appellant's bid protest were allowed because of an arbitrary and capricious responsibility determination by the contracting officer, the government *would be obligated to rebid the contract, and appellant could compete for the contract once again.* Under these circumstances, the appellant has a substantial chance of receiving the award and an economic interest and has standing to challenge the award.

Garufi, 238 F.3d 1324, 1334 (emphasis added). IMS submits that the circumstances here are identical to those discussed in Garufi. If this Court sustains IMS's bid protest, and holds that no offeror was small, then the government would be obligated to rebid the contract (using full and open competition), and IMS could compete for the contract once again. In such a circumstance, IMS would have a substantial chance of receiving the award as well as an economic interest which confers standing on IMS to challenge the award to Aegis and Torres.

Other cases are to the same effect regarding standing. In Northrop Grumman Corp. v. United States,[67] Northrop Grumman and Lockheed Corp. brought a bid protest alleging that two delivery orders issued to Raytheon for a radar system by the Government were unlawful because they improperly relaxed and changed contract requirements to an extent that the contract should be subject to new competitive bidding. Lockheed had never submitted a proposal on the original contract work, even though it had an opportunity to do so.[68] The Court held that Lockheed had standing where it demanded competition for the new work because it would "determine standing based on whether the protesting contractor could compete for the new contract work and whether it has an economic interest in such work, unhindered by the restrictions applicable when a bidder protests a solicitation that has already taken place.[69] The Court held that Lockheed had standing if it could show it would participate as a bidder for, and have an economic interest in the new

[67] 50 Fed. Cl. 443 (2001).
[68] Id. at 456.

uncompeted work.[70] IMS's interest is exactly the same, as is its standing. If the Army holds a new *full and open competition for the linguists herein*, never before held for large business offerors, IMS will submit an offer, has an economic interest, and a good chance of winning.

To the same effect, finding standing where there would be a new procurement if relief were granted by the Court, is Phoenix Air Group, Inc. v. United States.[71] Phoenix alleged a violation of statute (an unlawful sole-source award). Even though there had been no competition, the Court noted that:

> Phoenix's connection to the 'procurement' [and the basis for its standing before the Court of Federal Claims] is its readiness and ability to bid for work which [Phoenix] argues should be competitively procured by the Air Force. Phoenix's economic interest is the revenue which it might gain if it were to perform the work under a *different* contract.[72]

IMS is in the same position as Phoenix, namely, the Compl. alleges that the present award to Aegis is unlawful, and that in a new, lawful full and open competition for the linguists, IMS is ready and able to bid as a large business. It therefore has standing.

As submitted in its Complaint, IMS meets all the requirements for standing. If the Court agrees that none of the offerors in the competitive range are small, then it must direct a termination of award to Aegis, and demand a new (full and open competition) procurement if the Army still has a requirement for these services. In such a new procurement, IMS, as a non-small business would be a prospective bidder, since it still intends to bid, and would therefore possess a direct economic interest. In such a new procurement, IMS would also have a substantial chance of winning award, *since IMS was awarded this contract in preference to both Aegis and Torres.* (IMS was awarded the contract on January 31, 2007 before Aegis received the award on

---

[69] Id.
[70] Id.
[71] 46 Fed. Cl. 90 (2000).
[72] Id. at 102 (emphasis added).

September 21, 1007. Compl. at ¶¶ 15, 23. Torres has never received a contract award under this procurement).

Notwithstanding the failure of both the SBA and the Army to perform their obligatory functions of review of small business size status and consideration of ostensible subcontractors, Defendant asks this Court to forgo any review of the integrity of the process and the size of the awardee. Plaintiff was an essential part of this procurement process, received an award and was deemed other than small--something which the Army and SBA could and should have done for all competitive offerors, but failed to do. This undermining of the integrity of the procurement process cannot be permitted by the Court, which should find that IMS has standing because of the unlawful defects in the procurement process such that a new competition must be held.

**IV. THIS ACTION IS JUSTICIABLE**

Defendant asserts that IMS's protest "cannot as a matter of law, affect the award of the contract at issue in this case" and therefore is nonjusticiable.[73] The Motion then goes on to assert that *under Office of Hearings and Appeals (SBA)* rules and precedents, this Court may not order a remedy that affects the award of the Aegis contract.

Defendant misreads the significant authority of this Court and the basis of the Compl. As noted previously, this action is not an appeal of a size determination. More important, this Court is not bound by the rules of the SBA. The Tucker Act provides jurisdiction to hear bid protests "in connection with a procurement or proposed procurement."[74] In order to provide relief in a bid protest case, the Court "may award any relief that [it] considers proper, including declaratory

[73] Mo. To. Dism. at 9.
[74] 28 U.S.C. § 1491(b)(1).

and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs."[75]

This Court can order the Army to terminate the Aegis contract for convenience, based on the fact that the current award to Aegis undermines the integrity of the procurement system. In U.S. v. Amdahl, the Court indicated that a contract may be terminated for convenience where the procurement procedures that were followed were wrong.[76] Indeed, although its authority rests on a different statute, the Government Accountability Office has recommended termination for convenience where it was an appropriate remedy.[77]

Accordingly, because this action is not a mere appeal of a size determination but an allegation of unlawful conduct, the court can grant relief and this action is justiciable.

## V. IMS DOES NOT CHALLENGE THE 2006 SMALL BUSINESS SET ASIDE OF THE ARMY

Defendant asserts that by submitting a bid as a small business, IMS has waived its right to challenge a small business set aside. This misconstrues IMS's action here. IMS does not challenge the Army's 2006 decision to set aside this procurement for small business, and it is not now protesting that solicitation.

At the time of the original solicitation, IMS saw no defects in it, and made no protest or challenge. However, since the offers were submitted and three size protests have been

[75] 28 U.S.C. § 1491(b)(2). The Federal Circuit has repeatedly acknowledged that § 1491(b)(2) grants this Court authority to order equitable relief in bid protest cases, which is precisely what IMS seeks. See, e.g., Massie v. United States, 226 F.3d 1318, 1321 (Fed. Cir. 2000); accord First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d 1279, 1294 (Fed. Cir. 1999).

[76] 786 F.2d 387, 395 (Fed. Cir. 1986) (citing John Reiner & Co. v. United States, 325 F.2d 438 (Ct. Cl. 1963) and Brown & Son Elec. Co. v. United States, 325 F. 2d 446 (Ct. Cl. 1963).

[77] See, e.g., Data Based Decisions, Inc., B-232663.2, Jan. 26, 1989, 89-1 CPD ¶ 87 (recommending termination for convenience after issuing a new solicitation); and Stellar Industries, Inc., B-218287, May 30, 1985, 85-1 CPD ¶ 616 (recommending examination of size of one offeror, and if small, termination for convenience).

adjudicated by the SBA, it has only now become apparent that there is *no* small business within the competitive range. It is now evident that the Army has awarded a 100 percent small business set aside to a business that is not small. Under the Small Business Act and the FAR, this must be corrected by the Court so that award is either made to a small business, or full and open competition is held. Absent such a correction, the integrity of the entire process of small business set-asides stands in serious question.

## CONCLUSION

Defendant's Mo. To Dism. misconstrues the nature of this action. Plaintiff has standing to bring this timely action, and the Court may grant relief. Under the Tucker Act and the developed case law, IMS meets all the tests of an interested party. IMS urges the court to deny the Mo. To. Dism.

Respectfully submitted,

DATE: December 12, 2007

__/s/ Richard D. Lieberman________

Richard D. Lieberman
McCarthy, Sweeney & Harkaway, PC
2175 K St., NW, Suite 600
Washington, DC 20037
202-775-5560
fax 202-775-5574
rlieberman@mshpc.com

Counsel to Plaintiff, International Management Services, Inc.

CERTIFICATE OF FILING

I hereby certify that on December 12, 2007 a copy of plaintiff's "Opposition to Motion to Dismiss" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the court's electronic filing system. Parties may access this filing through the court's system.

/s/ Richard D. Lieberman