# In the United States Court of Federal Claims

No. 07-831 C
(Filed Under Seal: December 21, 2007)
(Reissued: January 9, 2008)[1]

| | | |
|---|---|---|
| INTERNATIONAL MANAGEMENT SERVICES, INC., Plaintiff, | * | Postaward Bid Protest; Motion to Dismiss; RCFC 12(b)(1); RCFC 12(b)(6); Standing; Justiciability; Small Business Set Aside; Size Determinations |
| v. | * | |
| THE UNITED STATES, Defendant, | * | |
| and | * | |
| AEGIS, MISSION ESSENTIAL PERSONNEL LLC, Defendant-Intervenor. | * | |

Richard D. Lieberman, Washington, DC, for plaintiff.

David D'Alessandris, United States Department of Justice, Washington, DC, for defendant.

Laurel A. Hockey, Washington, DC, for defendant-intervenor.

## OPINION AND ORDER

**SWEENEY**, Judge

This postaward bid protest comes before the court on Defendant's Motion to Dismiss. Defendant seeks dismissal of plaintiff's complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). Specifically, defendant contends

[1] The court issued this Opinion and Order under seal on December 21, 2007. The court directed the parties to submit proposed redactions by January 11, 2008. All parties have filed notices with the court indicating that they have not identified any protected information that requires redaction.

that plaintiff lacks standing to bring this protest, that plaintiff improperly seeks review of nonjusticiable determinations, and that plaintiff is prohibited from challenging the terms of the solicitation once the contract has been awarded. For the reasons set forth below, the court grants defendant's motion.

## I. BACKGROUND

### A. Factual History[2]

Plaintiff International Management Services, Inc. is a Maine corporation "engaged in the business of providing linguists on a commercial basis." Compl. ¶ 1. On August 13, 2006, plaintiff submitted a bid in response to solicitation number W911W4-05-R-0006 ("solicitation"), issued by the United States Army Intelligence and Security Command ("Army") on June 30, 2006, for Linguist Translation and Interpretation Support for Operation Enduring Freedom in Afghanistan. Id. ¶¶ 5, 9. The solicitation described an Indefinite Delivery, Indefinite Quantity task order contract, with a minimum order of $10 million and maximum orders of $703 million. Id. ¶¶ 7-8. In addition, the solicitation was "100 percent set aside for small business using North American Industry Classification System ("NAICS") code 5419[3]0 (Translation and Interpretation Services), with a size standard of $6.5 million."[3] Id. ¶ 6.

Plaintiff avers that four contractors were considered by the Army to be in the competitive range–plaintiff; defendant-intervenor Aegis, Mission Essential Personnel LLC; Torres Advanced Enterprise Solutions, LLC ("Torres"); and Thomas Computer Solutions, LLC ("Thomas"). Id. ¶ 11. On December 15, 2006, after negotiations, the Army awarded the contract to Thomas. Id. ¶ 12. Five days later, plaintiff, defendant-intervenor, and Torres filed size protests with the Army's contracting officer, contending that Thomas was not a small business. Id. ¶ 13. On January 8, 2007, the Small Business Administration ("SBA") issued a size determination in response to the three size protests that found Thomas "to be other than small because its average annual receipts exceeded $6.5 million." Id. ¶ 14. As a result of the SBA's finding, on January 31, 2007, the Army rescinded the contract award to Thomas and instead awarded the contract to plaintiff. Id. ¶ 15.

About a week after the Army's contract award to plaintiff, both defendant-intervenor and Torres filed size protests with the Army's contracting officer, contending that plaintiff "was not a

---

[2] The facts are derived from the Complaint for Injunctive and Declaratory Relief ("Compl."), filed on November 28, 2007. Because a motion to dismiss merely tests the sufficiency of a complaint, Conley v. Gibson, 355 U.S. 41, 45-46 (1957), it is unnecessary for the court to cite the Administrative Record that was filed in this case on December 4, 2007.

[3] Although plaintiff contends that the NAICS code was 54190, federal regulations indicate that the appropriate NAICS code for Translation and Interpretation Services is 541930. 13 C.F.R. § 121.201 (2006).

small business because of its affiliation with WorldWide Language Resources, Inc. ("WWLR") and based on its undue reliance on WWLR under the ostensible subcontractor rule." Id. ¶¶ 16-17. Then, on February 16, 2007, both defendant-intervenor and Torres filed protests with the United States Government Accountability Office ("GAO"), "asserting that the Army had improperly selected [plaintiff] for award because the Army's evaluation was improper, the Army had failed to conduct meaningful discussions and the Army's best value determination was unreasonable." Id. ¶ 18. The SBA issued its size determination concerning plaintiff on March 2, 2007, finding that plaintiff was "other than small both because it had one or more ostensible subcontractors and because it was affiliated with WWLR." Id. ¶ 19. The SBA also noted that "with a size standard of $6.5 million, it is not surprising that a small business would be forced to rely heavily on its larger subcontractors." Id. ¶ 20. As a result of the SBA's finding, the Army rescinded the contract award to plaintiff. Id. ¶ 21. Two days later, the GAO dismissed the protests of defendant-intervenor and Torres as moot. Id. ¶ 22.

On September 21, 2007, the Army awarded the contract to defendant-intervenor. Id. ¶ 23. Six days later, on September 27, 2007, plaintiff filed a size protest with the Army's contracting officer, contending that both defendant-intervenor and Torres were "other than small . . . ." Id. ¶¶ 24-25. Plaintiff argued that defendant-intervenor was not a small business because it exceeded "the relevant receipts standard" and because it was affiliated with Science Applications International Corporation ("Science Applications"), "a large business with revenues of $8.3 billion in fiscal year 2007," which served as the ostensible subcontractor. Id. ¶ 24. Plaintiff then argued that Torres was not a small business because it "exceeded the relevant receipts standard" and because it was affiliated with L-3 Communications, "a large business," which served as the ostensible subcontractor. Id. ¶ 25.

Meanwhile, on October 3, 2007, and October 9, 2007, Torres filed two protests concerning the solicitation, but of an unknown nature, with the GAO. Id. ¶¶ 26-27. Torres then filed a size protest with the Army's contracting officer on October 18, 2007, asserting that defendant-intervenor was not a small business because it "exceeded the relevant receipts standard" and it "was affiliated with several additional entities based solely upon the appearance of the name of [defendant-intervenor's] Chief Executive Officer in Ohio Secretary of State records." Id. ¶ 28.

The SBA dismissed plaintiff's size protest of defendant-intervenor on October 26, 2007, finding "that [plaintiff] lacked standing under the provisions of 13 C.F.R. § 121.1004(a)(1) and 13 C.F.R. § 121.1001(a)(1)(iv)." Id. ¶ 29. In its October 26, 2007 decision, the SBA did not mention plaintiff's protest of Torres's size. Id. The SBA then issued another size determination on November 2, 2007, apparently in response to Torres's size protest of defendant-intervenor, finding that defendant-intervenor was a small business under the solicitation's size standard. Id. ¶ 30. The SBA did not make a finding concerning whether Science Applications was defendant-intervenor's ostensible subcontractor. Id. Finally, on November 9, 2007, the GAO dismissed Torres's protests for reasons unknown to plaintiff. Id. ¶ 31.

### B. Procedural History

Plaintiff filed a Complaint for Injunctive and Declaratory Relief in this court on November 28, 2007, advancing three general allegations. Count I alleges that the Army's contracting officer, in violation of Federal Acquisition Regulation ("FAR") § 19.501 and the Small Business Act, 15 U.S.C. § 644, "failed to raise or consider the question of [defendant-intervenor]'s ostensible subcontractor, even though the Contracting Officer was fully aware of this issue." Compl. ¶ 33. Count II alleges that the SBA, in violation of 13 C.F.R. § 121.1009, FAR § 19.501, and the Small Business Act, 15 U.S.C. § 644, "failed to raise or consider the question of [defendant-intervenor]'s ostensible subcontractor [Science Applications], an unquestionable large business (revenues of $8.3 billion in fiscal [year] 2007), even though the SBA knew or should have known that this was a significant issue in this procurement." Compl. ¶ 35. Count III alleges that the Army, in violation of FAR § 19.501 and the Small Business Act, 15 U.S.C. § 644, "awarded the contract to an offeror that was 'other than a small business,' and thereby undermined one of the basic tenets of the Small Business Act, the regulations promulgated thereunder, and FAR Part 19." Compl. ¶ 37. As remedies, plaintiff requested a preliminary injunction, a declaration that the contract award to defendant-intervenor was improper and violated the FAR and the Small Business Act and its implementing regulations, an order directing the Army to recompete the contract under full and open competition, and reasonable costs, attorney's fees, and proposal costs. Id. ¶¶ 38-41. Along with its complaint, plaintiff filed a Motion for Preliminary and Permanent Injunction and a supporting brief.

The court conducted an initial status conference in the case on November 29, 2007, at which defendant expressed its desire to contest plaintiff's standing to bring this protest, as well as the justiciability of the protest. Because the parties required additional time to determine the scope of the briefs and the briefing schedule, the court directed the filing of a joint status report by the close of business on the following day. The status report, filed by defendant with the consent of all parties, indicated that defendant would file a motion to dismiss based on standing and justiciability, and suggested a schedule for briefing and oral argument. The court adopted the parties' proposed schedule. Accordingly, defendant filed the instant motion on December 6, 2007, plaintiff and defendant-intervenor filed their responses on December 12, 2007, and defendant filed its reply on December 20, 2007.[4] Earlier this date, the court heard argument and issued the instant decision.

---

[4] Defendant originally filed its reply on December 17, 2007. However, because defendant did not sign the reply as required by RCFC 11(a) and RCFC Appendix E, the court struck it from the record and directed defendant to file a properly signed reply.

## II. DISCUSSION

### A. Legal Standard for a Motion to Dismiss

In ruling on a motion to dismiss, the court assumes that the allegations in the complaint are true and construes those allegations in plaintiff's favor. Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995). With respect to RCFC 12(b)(1), plaintiff bears the burden of proving, by a preponderance of the evidence, that the court possesses subject matter jurisdiction. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). The court may look to evidence outside of the pleadings to determine the existence of subject matter jurisdiction. Land v. Dollar, 330 U.S. 731, 735 & n.4 (1974); Reynolds, 846 F.2d at 747. If the court finds that it lacks subject matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim. If the court finds that it possesses jurisdiction to entertain one or all of plaintiff's claims, it still must dismiss, pursuant to RCFC 12(b)(6), any claim where the factual allegations do not "raise a right to relief above the speculative level . . . ." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 1969. Indeed, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

### B. Subject Matter Jurisdiction

Whether the court has jurisdiction to decide the merits of a case is a threshold matter. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868). The parties or the court sua sponte may challenge the court's subject matter jurisdiction at any time. Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004).

The ability of this court to hear and decide suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). The waiver of immunity "cannot be implied but must be unequivocally expressed." United States v. King, 395 U.S. 1, 4 (1969). The Tucker Act, the principal statute governing the jurisdiction of the United States Court of Federal Claims ("Court of Federal Claims"), waives sovereign immunity for claims against the United States in postaward bid protests.[5] See 28 U.S.C. § 1491(b) (2000). Specifically, the Tucker Act provides that the Court of Federal Claims "shall have jurisdiction to render judgment on an action by an

---

[5] Jurisdiction over postaward bid protests was added to the Tucker Act by section 12 of the Administrative Dispute Resolution Act of 1996. Pub. L. No. 104-320, 1110 Stat. 3870, 3874-76.

interested party objecting to . . . the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." Id. § 1491(b)(1). Further, the Tucker Act permits the Court of Federal Claims to "award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs." Id. § 1491(b)(2).

**C. Standing**

Even in those cases where a court possesses jurisdiction over the parties and the subject matter of the dispute, the standing doctrine may constrain the court's exercise of its authority. "[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498 (1975). The standing inquiry involves both Article III "case or controversy" limitations on federal jurisdiction and prudential limitations on the exercise of federal jurisdiction.[6] Id. Plaintiff bears the burden of establishing its standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

The Tucker Act permits postaward bid protests to be brought by "interested parties." 28 U.S.C. § 1491(b)(1). The United States Court of Appeals for the Federal Circuit ("Federal Circuit") has held that the term "interested party" should be construed in accordance with the Competition in Contracting Act of 1984, and that, accordingly, "standing under § 1491(b)(1) is limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." Am. Fed'n of Gov't Employees v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001) (citing 31 U.S.C. § 3551(2)(A)). Accordingly, plaintiff must establish that it "(1) is an actual or prospective bidder, and (2) possesses the requisite direct economic interest." Rex Serv. Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006).

To prove that it possesses a "direct economic interest," plaintiff must show that it had a "substantial chance" of receiving the contract. Id. at 1307. In other words, "[t]o have standing,

---

[6] Congress created the Court of Federal Claims under Article I of the United States Constitution. 28 U.S.C. § 171(a). Courts established under Article I are not bound by the "case or controversy" requirement of Article III. Zevalkink v. Brown, 102 F.3d 1236, 1243 (Fed. Cir. 1996). However, the Court of Federal Claims and other Article I courts traditionally have applied the "case or controversy" justiciability doctrines in their cases for prudential reasons. See id.; CW Gov't Travel, Inc. v. United States, 46 Fed. Cl. 554, 558 (2000). These justiciability doctrines include, among others, ripeness, standing, mootness, and political questions. Fisher v. United States, 402 F.3d 1167, 1176 (Fed. Cir. 2005); see also Anderson v. United States, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003) ("The Court of Federal Claims . . . applies the same standing requirements enforced by other federal courts created under Article III.").

the plaintiff need only establish that it 'could compete for the contract' . . . ."[7] Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1370 (Fed. Cir. 2002) (citing Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1334 (Fed. Cir. 2001)).

**D. Plaintiff Lacks Standing to Contest the Award of the Contract to Defendant-Intervenor**

As noted above, plaintiff asserts three claims for relief in its complaint. Counts I and II allege that the Army and the SBA, respectively, failed, despite their knowledge, to consider whether defendant-intervenor had an ostensible subcontractor that disqualified it as a small business and rendered it ineligible for contract award. Compl. ¶¶ 33, 35. Accordingly, plaintiff seeks the cancellation of the contract award to defendant-intervenor. Id. ¶ 39. Count III, read in conjunction with the Request for Relief, alleges that the Army awarded the contract to a business that was not a small business, id. ¶ 37, and requests that the court direct the Army to recompete the solicitation under full and open competition because "there is no qualified small business capable of providing the required linguist services," id. ¶ 40. Implied in the latter allegation is plaintiff's belief that the solicitation was not reasonable as a set aside for small businesses.

Defendant contends that plaintiff lacks standing to contest the award of the contract to defendant-intervenor and to challenge the SBA's size determination of defendant-intervenor. Def.'s Mot. Dismiss ("Mot.") 6-9. Defendant's standing argument focuses on whether plaintiff is an "interested party" under the Tucker Act. Id. at 6-8. Defendant does not contest that plaintiff was an "actual or prospective bidder"; rather, defendant argues that plaintiff fails to meet the "substantial chance" requirement because plaintiff has "no chance of being awarded the contract." Id. at 8. Defendant explains that plaintiff has been declared "other than small" and, thus, if the Army rescinded the contract award to defendant-intervenor, plaintiff could not be awarded the contract. Id. In fact, defendant contends, if the Army rescinded the contract award to defendant-intervenor, Torres, which has not been declared "other than small," would be the next in line for the contract award. Id.

Plaintiff disputes defendant's characterization of its bid protest as seeking merely to overturn the SBA's size determination of defendant-intervenor and the Army's subsequent

[7] In Rex Service Corp., the Federal Circuit cited Statistica, Inc. v. Christopher, 102 F.3d 1577, 1582 (Fed. Cir. 1996), for the proposition that "the 'substantial chance' standard requires the protesting party to 'establish not only some significant error in the procurement process, but also that there was a substantial chance it would have received the contract but for that error.'" 448 F.3d at 1308. However, Statistica, Inc., addressed the "substantial chance" standard as it related to the merits of the protestor's request for injunctive relief, and not for the threshold issue of standing. 102 F.3d at 1581-82.

contract award to defendant-intervenor.[8] Pl.'s Opp'n Def.'s Mot. Dismiss ("Opp'n") 20. Plaintiff instead casts its bid protest as an attempt to uphold the integrity and fairness of the procurement process. Id. at 2, 20. As such, plaintiff contends that it "is not challenging the SBA's size determination of [defendant-intervenor] on an isolated basis," and instead characterizes its protest as challenging any award to defendant-intervenor or Torres "because neither is a small business when evaluated in conjunction with their ostensible subcontractors." Id. at 20. Thus, according to plaintiff, if the court sustains its protest and finds that "no offeror was small, . . . the government would be obligated to rebid the contract (using full and open competition), and [it] could compete for the contract once again." Id. at 22.

As the court reads the complaint, plaintiff seeks two forms of relief. First, plaintiff requests that the court set aside the contract award to defendant-intervenor.[9] In support of this request, plaintiff contends in Counts I and II that the Army and the SBA knowingly failed to consider defendant-intervenor's ostensible subcontractor during the procurement process. However, plaintiff is not an "interested party" entitled to pursue either claim because under the facts of this case, there is no chance, much less a substantial chance, that plaintiff could be awarded the contract in the event that the Army's contract with defendant-intervenor is set aside. Assuming, arguendo, that the SBA and the Army improperly considered defendant-intervenor to be a small business, plaintiff itself is not a small business and there remains a small business in the competitive range–Torres–that would be awarded the contract if the award to defendant-intervenor is set aside.[10] Plaintiff's argument that Torres is not a small business, id. at 2, 12-17, 20, lacks merit because neither the contracting officer nor the SBA has determined that Torres is not a small business, and this court lacks any authority to entertain a size protest. See 13 C.F.R. § 121.1002 (providing that the SBA "makes all formal size determinations"); see also Compl. ¶¶ 25, 29 (alleging that plaintiff lodged a size protest of Torres with the SBA as part of its size protest of defendant-intervenor but that the SBA dismissed its size protest of defendant-intervenor for lack of standing, without addressing the size protest of Torres). Thus, without any

---

[8] Defendant-intervenor similarly interprets the three causes of action in plaintiff's complaint to seek the cancellation of the contract to defendant-intervenor and a new award under the solicitation. Intervenor Aegis, Mission Essential Personnel, LLC's Resp. Def.'s Mot. Dismiss Lack Standing & Non-Justiciability ("Resp.") 12.

[9] Subsumed within this requested relief is plaintiff's request for an injunction prohibiting the Army and defendant-intervenor from proceeding with contract performance.

[10] Although the court is obligated to assume that all allegations in the complaint are true, Henke, 60 F.3d at 797, plaintiff's allegation that Torres is "other than small," Compl. ¶ 28, does not "raise a right to relief above the speculative level" as required by Bell Atlantic Corp., 127 S. Ct. at 1965.

chance of winning the contract in the event that the contract with defendant-intervenor is set aside, plaintiff lacks standing under the Tucker Act.[11]

The second, and more general, form of relief requested by plaintiff is the full and open recompetition of the contract. However, to obtain such relief, the court would first be required to set aside the contract award to defendant-intervenor, relief that the court has already determined that plaintiff is foreclosed from pursuing because it lacks standing.[12] Thus, it follows that plaintiff lacks standing to seek recompetition of the contract. As noted by defendant, Def.'s Reply Support Def.'s Mot. Dismiss Lack Standing & Non-Justiciability 7-10, the cases cited by plaintiff in support of its standing argument are unpersuasive. For example, plaintiff's reliance upon Impresa Construzioni is unavailing because even though the Federal Circuit held that sustaining the bid protest would require the contract to be rebid, 238 F.3d at 1334, its holding was undoubtably based on the fact that after setting aside the award, there were no other offerors in the competitive range to which the award could be made, see id. at 1329. This is not true in the instant case, where Torres remains a qualified bidder in the competitive range.

The instant case is also distinguishable from two other cases cited by plaintiff where the protestors sought the recompetition of a contract: Northrop Grumman Corp. v. United States, 50 Fed. Cl. 443 (2001), and Phoenix Air Group, Inc. v. United States, 46 Fed. Cl. 90 (2000). See Opp'n 22-23. In Northrop Grumman Corp., the Court of Federal Claims held that plaintiff had

---

[11] To the extent that plaintiff is challenging the SBA's size determination of defendant-intervenor, this conclusion does not change. In addition to providing the court with "jurisdiction to render judgment on an action by an interested party objecting to . . . the award of a contract," the Tucker Act also grants the court "jurisdiction to render judgment on an action by an interested party objecting to . . . any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). The court assumes, without deciding, that the SBA's size determination was made "in connection with a procurement." Compare RAMCOR Servs. Corp. v. United States, 185 F.3d 1286, 1289 (Fed. Cir. 1999) (holding that the Tucker Act's grant of jurisdiction over violations of statute or regulation "in connection with a procurement" is "very sweeping in scope" and that "[a]s long as a statute has a connection with a procurement proposal, an alleged violation suffices to supply jurisdiction"), with 13 C.F.R. § 121.1101 (requiring a party who disagrees with a formal size determination by the SBA to file an appeal with the SBA's Office of Hearings and Appeals ("OHA") as a prerequisite to seeking judicial review). Thus, the "interested party" requirement remains applicable. Accordingly, the court need not consider defendant's analysis of plaintiff's standing to challenge the SBA's size determination under the standards provided in 5 U.S.C. § 706. See Mot. 8-9.

[12] Defendant-intervenor alludes to this problem in its response to defendant's motion to dismiss. See Resp. 14 ("Since [plaintiff] would be eligible to compete under a full and open competition, [plaintiff] presumes that its lack of standing to challenge the award to [defendant-intervenor] is cured.").

standing to bring a bid protest because its challenge was based on a cardinal change in contract work after the contract had been awarded, and not on the propriety of the original award. 50 Fed. Cl. at 456. In the instant case, plaintiff does not allege that defendant-intervenor's work does not comply with the terms of the contract as awarded, only that defendant-intervenor was not qualified to bid on the contract in the first place. In Phoenix Air Group, Inc., the Court of Federal Claims held that plaintiff had standing to challenge the sole-source acquisition of flight training services because it would have had a chance to obtain the contract if the contract had been competitively bid. 46 Fed. Cl. at 101-03. Plaintiff in the instant case does not contend that the contract was not competitively bid; rather, plaintiff argues that none of the offerors was qualified to bid on the contract.

Furthermore, plaintiff's view that it has standing because of the need to uphold the integrity and fairness of the procurement process is similarly unavailing. While the court does not disagree that "the public has a strong interest in preserving the integrity of the procurement process," Opp'n 20 n.63 (quoting United Int'l Investigative Servs., Inc. v. United States, 41 Fed. Cl. 312, 323 (1998)), a party must have standing to bring such a claim. Accordingly, because plaintiff lacks standing, the court must dismiss plaintiff's complaint for lack of jurisdiction.

### E. Plaintiff Cannot Challenge the Designation of the Solicitation as a Small Business Set Aside

Even if plaintiff had standing to challenge the Army's award of the contract to defendant-intervenor or to obtain recompetition of the contract, plaintiff would be unable to state a claim upon which relief could be granted.

The ultimate goal articulated by plaintiff is to have the contract recompeted under full and open competition. However, because the solicitation was 100 percent set aside for small businesses, full and open recompetition would require an amendment to the solicitation. Thus, despite its assertion to the contrary, Opp'n 25, plaintiff is not attacking the Army's evaluation of the proposals, but the terms of the solicitation itself. A recent Federal Circuit decision confirms that plaintiff's proposed course is impermissible.

In Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308 (Fed. Cir. 2007), an unsuccessful bidder lodged a protest with the Court of Federal Claims alleging that because the successful bidder's proposal did not include information required by the Service Contract Act, the contracting agency mistakenly evaluated the successful bidder's proposal as financially viable. Id. at 1312. According to the Federal Circuit:

> The Court of Federal Claims found that [the protestor] "missed its chance to protest" based on the Service Contract Act because [the protestor] (1) was attempting to challenge the terms of the solicitation, rather than the evaluation process, and (2) did not raise the challenge prior to the submission of the proposals.

Id. at 1312. The Federal Circuit agreed with the Court of Federal Claims' characterization of the protestor's argument "as a challenge to the terms of the solicitation," noting that "the decision not to apply the Service Contract Act to the contract" was made "during the solicitation, not evaluation, phase of the bidding process." Id. at 1313. The Federal Circuit then examined the timing of the protestor's challenge, and held, congruent with "the statutory mandate of § 1491(b)(3) for courts to 'give due regard to . . . the need for expeditious resolution of the action,'" id. at 1315, "the rationale underlying the patent ambiguity doctrine," id., "the GAO's adoption of a similar rule in its bid protest regulations," id. at 1314, and "the analogous doctrines of laches and equitable estoppel" in the patent context, id., that

> a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection afterwards in a § 1491(b) action in the Court of Federal Claims.

Id. at 1315. In the case sub judice, defendant contends that this waiver rule should be applied to plaintiff's complaint because despite being fully aware of the 100 percent set aside for small businesses and despite submitting a bid as a small business, plaintiff "did not protest the small business set aside until after the solicitation was closed and the contract was awarded to [defendant-intervenor]." Mot. 15. Defendant-intervenor is even more emphatic:

> [Plaintiff] has known since at least June 2006 that this procurement was being set aside exclusively for small businesses, yet it never filed any protest against the Solicitation with the Agency, at [the] GAO, or the Court until November 28, 2007, and now gives no reason or excuse for its delay in bringing its challenge to this Court.

Resp. 10-11.

Other decisions of the Court of Federal Claims have discussed and applied the waiver rule adopted by the Federal Circuit in Blue & Gold Fleet, L.P. See, e.g., Frazier v. United States, 79 Fed. Cl. 148, 177 (2007) ("The proper time to challenge the provisions of a prospectus is before bids are required to be submitted, in a pre-award bid protest."); Weeks Marine, Inc. v. United States, 79 Fed. Cl. 22, 36 (2007) ("Weeks's objective in this lawsuit is to have the Corps of Engineers continue its use of sealed bidding, as it historically has done. If Weeks were to wait until it lost a competitive award under the new IDIQ procurement method, its protest against the solicitation terms would be untimely."); Erinys Iraq Ltd. v. United States, 78 Fed. Cl 518, 533 n.7 (2007) (finding that to the extent that the protestor was challenging the solicitation's comparison of "Fixed Labor Rate task orders instead of hourly labor rates," the challenge was untimely and should have been raised "prior to the closing date for receipt of proposals"); Moore's Cafeteria Servs. v. United States, 77 Fed. Cl. 180, 184-85 (2007) (holding that plaintiff could have objected to an amendment to "the solicitation during the bidding process, and in not

doing so, waived its right to do so before this court"). Most recently, the Court of Federal Claims applied the waiver rule to foreclose a protestor's allegation that "the solicitation should have been set aside for small businesses." Benchmade Knife Co. v. United States, No. 07-593C, 2007 WL 4335442, at *1 (Fed. Cl. Dec. 10, 2007). Similarly, in this case, the waiver rule precludes plaintiff from challenging whether the solicitation should have been set aside for small businesses.[13] Thus, even if plaintiff had standing to sue, it has failed to state a claim upon which to obtain relief.

**F. Plaintiff's Complaint Presents Nonjusticiable Issues**

In addition to being foreclosed from challenging the terms of the solicitation for lack of standing and by operation of the waiver rule, plaintiff has not presented a justiciable issue for the court's consideration. As a preliminary matter, the court notes that the inquiry into the justiciability of a claim is distinct from the court's jurisdictional inquiry. Baker v. Carr, 369 U.S. 186, 198 (1962); Murphy v. United States, 993 F.2d 871, 872 (Fed. Cir. 1993). An issue is justiciable if it is within the court's competency to supply relief. Murphy, 993 F.2d at 872.

In its complaint, plaintiff alleges that the SBA incorrectly determined defendant-intervenor to be a small business and that the Army improperly awarded the contract to a bidder that was not a small business. Compl. ¶¶ 33, 35, 37, 39. Defendant argues that even if plaintiff is an "interested party," the court is unable to "supply relief to [plaintiff] because, in light of the procedural posture of its appeal to the SBA, any new determination as to [defendant-intervenor]'s status as a small business would not affect the existing award of the contract." Mot. 10.

Protests of a bidder's status as a small business are governed by FAR subpart 19.3 and title 13, parts 121 and 134, of the Code of Federal Regulations.[14] The size protest must be filed with the contracting officer, who then must forward the protest to the appropriate SBA

---

[13] In a related argument, defendant-intervenor contends that plaintiff fails to allege any law or regulation violated by the Army in issuing the solicitation. Resp. 12-13; see also id. at 15 ("Yet [nowhere] in the complaint does [plaintiff] even attempt to set forth any facts demonstrating how the Agency's decision to set-aside the procurement for small businesses was flawed."). Citing the proposition that "a 'court may not assume that . . . defendant has violated laws in ways that plaintiff has not alleged," Brunetti v. Rubin, 999 F. Supp. 1408, 1410 (D. Col. 1998) (citing Associated Gen. Contractors v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983)), defendant-intervenor argues that plaintiff therefore cannot properly challenge the terms of the solicitation. Resp. 12-14. The court's application of the waiver rule renders this argument moot.

[14] The court cites to the versions of the FAR and the Code of Federal Regulations ostensibly in effect at the time the Army issued the solicitation, i.e., the June 28, 2006 version of the FAR and the January 1, 2006 version of the Code of Federal Regulations.

Government Contracting Area Office ("Area Office"). 13 C.F.R. §§ 121.1003, .1006(a); FAR § 19.302(c)(1). The Area Office then has ten business days in which to make a formal size determination. 13 C.F.R. § 121.1009(a); FAR § 19.302(g)(1). Upon making its determination, the Area Office must notify the contracting officer, the protestor, and the protested offeror of its decision via certified mail with return receipt requested. 13 C.F.R. § 121.1009(f); FAR § 19.302(g)(1). The contracting officer can award the contract based on the formal size determination. 13 C.F.R. § 121.1009(g)(2); FAR § 19.302(g)(2).

The Area Office's formal size determination may be appealed to the OHA, 13 C.F.R. §§ 121.1009(g)(3), .1101(a); FAR § 19.302(i), but if no appeal is taken, the Area Office's size determination "is the final decision of the agency," 13 C.F.R. § 121.1101(a); accord id. § 121.1009(g)(1). The appellant must serve a copy of the appeal petition on the contracting officer. Id. § 134.305(c)(2). If the contracting officer awards the contract prior to receiving notice of the appeal, "the contract shall be presumed valid." FAR § 19.302(g)(2). The OHA's final decision on appeal is the "final decision of the SBA and becomes effective upon issuance." 13 C.F.R. § 134.316(a)-(b). If the OHA dismisses the appeal, "the Area Office size determination remains in effect." Id. § 134.316(b). The SBA is required to inform the contracting officer of the OHA's final decision. FAR § 19.302(i). If the contracting officer receives the OHA's final decision prior to awarding the contract, the decision will apply to the pending procurement. Id.; 13 C.F.R. § 121.1009(g)(3). However, if the contracting officer awards the contract prior to receiving the OHA's final decision, the final decision will apply only to future procurements. 13 C.F.R. § 121.1009(g)(3); FAR § 19.302(i).

In the instant case, the Army awarded the contract to defendant-intervenor on September 21, 2007, and plaintiff lodged its size protest of defendant-intervenor with the contracting officer on September 27, 2007.[15] Compl. ¶¶ 23-24. The SBA dismissed plaintiff's size protest on October 26, 2007, for lack of standing, id. ¶ 29, and there is no evidence that plaintiff appealed the SBA's dismissal to the OHA. Thus, defendant argues, applying the procedural rules governing SBA size protests to the facts of this case, the Area Office decision cannot affect the award of the current contract and any subsequent appeal to the OHA would have only prospective effect. Mot. 14. Defendant concludes: "Because . . . the ability to affect the procurement is the sole basis upon which the Court's jurisdiction rests, it follows that there is no remedy that the Court can order within the constraints of its limited jurisdiction. The matter is therefore not justiciable." Id. at 2. Plaintiff responds that defendant has "misread[] the significant authority of the Court and the basis of the Compl[aint]," arguing that the rules of the SBA are irrelevant because the Tucker Act permits the court to "'award any relief that [it]

[15] As no party has contended otherwise, the court assumes that either 13 C.F.R. § 121.1004(2), 13 C.F.R. § 121.1004(4), or 13 C.F.R. § 121.1004(5), applies in this case, all of which allow for five business days to file a size protest. September 21, 2007, was a Friday, and September 27, 2007, was the following Thursday. Plaintiff clearly filed its protest within five business days of discovering the identity of the awardee.

considers proper, including declaratory and injunctive relief.'" Opp'n 24-25 (quoting 28 U.S.C. § 1491(b)(2)).

Although true that the Tucker Act provides this court with the authority to fashion appropriate equitable relief, it cannot provide the relief requested by plaintiff in this case. Congress has delegated to the SBA the authority to promulgate rules and regulations necessary to administer the Small Business Act, Pub. L. No. 85-536, 72 Stat. 384 (1958) (codified as amended at 15 U.S.C. ch. 14A). 15 U.S.C. § 634(b)(6). Included within this delegation is the authority to establish size standards for small businesses. Id. § 632. Pursuant to this authority, the SBA has promulgated 13 C.F.R. part 121, "Small Business Size Regulations," which includes specific procedures that must be followed to protest SBA size determinations and details the consequences of not complying with those procedures. The court cannot, and will not, ignore these regulations. Here, the contracting officer was authorized to award a contract based on a formal size determination, and did so without any notice that an appeal was pending before the OHA. Consequently, there can be no postaward size determination of defendant-intervenor or Torres that would apply to this contract. See Chapman Law Firm v. United States, 63 Fed. Cl. 25, 35 (2004) ("By failing to appeal promptly the decision of the SBA Area Office, plaintiff has forfeited its opportunity to affect the current contract award under the applicable regulations."). Accordingly, plaintiff's complaint presents nonjusticiable issues, and, as a result, fails to state a claim upon which relief can be granted.

## III. CONCLUSION

For the reasons set forth above, the court **GRANTS** Defendant's Motion to Dismiss pursuant to RCFC 12(b)(1) for lack of jurisdiction. The Clerk is directed to dismiss plaintiff's complaint without prejudice.

It does not appear to the court that this opinion contains any protected information, as all facts were taken from plaintiff's unsealed complaint. However, the court has issued the decision under seal in the event that the parties identify any protected information. The parties are directed to file any proposed redactions to this opinion **no later than Friday, January 11, 2008**.

No costs.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge